The State v. Reid.

THE STATE, *Appellant*, v. REID.

Division two, November 20, 1894.

1. **Criminal Law**: STATUTORY CONSTRUCTION. Criminal statutes should be strictly construed and not be extended or enlarged by judicial construction so as to embrace offenses or persons not plainly within their terms.

2. ———— : ———— : TRUST COMPANIES : BANKS. A trust company created under Revised Statutes, 1889, chapter 42, article 11, and its officers, are not included within the provisions of the Revised Statutes, 1889, section 3581, which makes it a felony for officers of banks or banking institutions to receive deposits when the bank or banking institution is insolvent, though such trust company has and exercises some of the functions of a bank.

3. ———— : ———— : ————. Nor does the fact that such trust company receives deposits subject to check in contravention of its charter, render it a banking institution, and its officers amenable to the statute punishing bank officers for receiving deposits when the bank is insolvent.

*Appeal from Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*R. F. Walker*, Attorney General, *Marcy K. Brown*, Prosecuting Attorney, and *Frank Johnson*, Assistant Prosecuting Attorney, for the state.

(1) Under the authorities and the terms of the statute creating it, the Western Trust & Saving Association falls within the definition of a banking institution. Wharton's Law Lexicon; Abbott's Law Lexicon; *Way v. Butterworth*, 106 Mass. 76; Boone on Corporations, sec. 212; *Oulton v. Sav. Institution*, 17 Wall. 118. (2) Whether a given corporation is or is not a banking institution depends not upon its name or the

title of the act under which it is organized, but upon the powers which such corporation has and exercises under its charter, or the statute under which it is incorporated. *Insurance and Trust Co. v. Debolt,* 16 Howard, 416; *New Orleans v. Savings Institution,* 32 La. Ann. 531. (3) To "discount" paper, in the language of banking, is "only a mode of loaning money." *Bank v. Baker,* 15 Ohio St. 690; *Freeman v. Britton,* 2 Harr. (N. J.) *loc. cit.* 206; *Talmage v. Pell,* 3 Selden (N. Y.), *loc. cit.* 348; *Smith v. Bank,* 26 Ohio St. 141. (4) "The 'discounting' of a note by a bank is understood to consist in the lending of money upon it, and deducting the interest or premium in advance." Webster's Dictionary, etc., *Bank v. Bruce,* 17 N. Y. *loc. cit.* 515; *In re Weeks,* 13 Bankr. Register 269. "Every discount of a bill or note is simply a loan." *Freeman v. Britton,* 2 Harr. (N. J.) *loc. cit.* 206. (5) "The ordinary meaning of the term 'to discount' is to take interest in advance, and in banking it is a mode of loaning money. It is the advance of money not due till some future period, less the interest which would be due thereon when payable." *Weckler v. Bank,* 42 Md. *loc. cit.* 592; *Pape v. Bank,* 20 Kan. *loc. cit.* 447. (6) "To discount a bill is simply to buy it for a less sum than that which upon its face is payable." *Saltmarsh v. Bank,* 14 Ala. *loc. cit.* 677; *Pape v. Bank,* 20 Kan. *loc. cit.* 451; 1 Bouv. Law Dict., title, "Discount;" *Bank v. Baker,* 15 Ohio St. *loc. cit.* 85. (7) Authority given to a corporation "to buy" includes "to discount," for "discounting" is not another term for "buying at a discount." *Tracy v. Talmage,* 18 Barb. (N. Y.) *loc. cit.* 462; *Bank v. Savery,* 82 N. Y. 291; *People v. Bank,* 1 Doug. (Mich.) *loc. cit.* 289. (8) The buying of a note for less than its face is a discount thereof within the meaning of the banking law. *Bank v. Savery,* 82 N. Y. 291. (9) The term "discounting,"

applied to securities in banking, includes either a loan upon or a sale of such securities. 1 Bouvier's Law Dict., title, "Discount;" *Bank v. Baker*, 15 Ohio St. *loc. cit.* 451; *Pape v. Bank*, 20 Kan. *loc. cit.* 85; *Smith v. Bank*, 26 Ohio St. 141. (10) The legislature clearly intended to bring within the penalties of section 3581 incorporated banks authorized by law, and all other corporations which might do a banking business, whether they were in law authorized to do such business or not. *State v. Kelsey*, 89 Mo. 658; *State v. Buck*, 108 Mo. 628.

*L. H. Waters, Peak & Ball, Beebe & Watson*, and also *Cook & Gossett* for respondent.

(1) There is a familiar rule of construing criminal statutes, that they should be strictly construed, and not extended or enlarged by judicial construction, so as to embrace offenses and persons not plainly and unmistakably within their terms. Sedgwick on Statutes, p. 324; *U. S. v. Morris*, 14 Pet. 694; *U. S. v. Wittenberg*, 5 Wheat. 76; *U. S. v. Clayton*, 2 Dillon, 219; *U. S. v. Whittier*, 7 Cent. Law Jour., 51; *State v. Green*, 87 Mo. 584; *State v. Bryant*, 90 Mo. 534; *Manz v. Railroad*, 87 Mo. 278. (2) Another rule of construction almost equally as familiar as the foregoing, is that statutes should be construed with reference to the condition and state of the law at the time of their adoption, and that words used in a statute should be construed with reference to their meaning, at the time of the passage of the act. *Hauser v. Thompson*, 56 Mo. App. 93; *Dawson v. Dawson*, 23 Mo. App. 169. (3) Even in civil matters, and under statutes far more favorable to the contention of the prosecution than our statutes, the courts have held that trust companies are not banks or banking institutions.

*Pratt v. Short,* 79 N. Y. 437; *Langard v. Railroad,* 49 Iowa, 317; *Wells-Fargo & Co. v. Railroad,* 23 Fed. Rep. 469; *Loan & Trust Co. v. Helmer,* 77 N. Y. 64; *Bank v. N. Y.,* 121 U. S. 138; *Selden v. Trust Co.,* 94 U. S. 419; Beach on Corp. sec. 163. Tested by the foregoing principles, trust companies do not fall within Revised Statutes, 1889, section 3581, forbidding the officers of any banking institution from receiving deposits when the bank or banking institution is insolvent.

GANTT, P. J.—This is an appeal by the state from the judgment of the circuit court of Clay county, sustaining a demurrer to an indictment in which said defendant is charged, as president of the Western Trust and Saving Association, a corporation duly organized under the laws of the state of Missouri, the same being a banking institution doing business in said county and state, with feloniously assenting to receiving a certain deposit of money to wit, $51.75, the money and property of Alexander C. Gibson on deposit in said Western Trust and Saving Association when said institution was in failing circumstances. The indictment is brought for a violation of section 3581, Revised Statutes, 1889.

The demurrer raises the question whether trust companies and the officers of such companies are embraced within the provisions of section 3581. The learned circuit judge, upon hearing the argument upon this question, held that trust companies were not embraced within the provisions of said section; but, further held, that it did not sufficiently appear upon the face of the indictment that the Western Trust and Saving Association was a trust company organized under article 11 of the Revised Statutes, and not a bank organized under article 9, stating, at the same

time, that if it should appear from the evidence upon the trial that said Western Trust and Saving Association was a company organized under article 11 of the Revised Statutes, he would sustain a demurrer to the evidence. Thereupon, the prosecuting attorney and the counsel for defendant entered into the stipulations copied into the record, agreeing that it was so organized, and the learned judge then sustained the demurrer to the indictment. The correctness of this ruling is the only question presented by this appeal.

I. For the purposes of this appeal we shall treat the record as if the stipulation constituted a part of the indictment, and it will be unnecessary to determine whether, without this agreement, it sufficiently appears from the face of the indictment that the Western Trust and Saving Association was a trust company organized under article 11 of Revised Statutes of 1889, a most interesting question, in view of our statutes requiring that every corporation organized under the laws of this state shall designate *in its name and title, the nature* and character of the business in which it proposes to engage.

The Western Trust and Saving Association was a trust company organized under article 11 of the Revised Statutes of 1889, and the defendant was its president at the time of the acts complained of, to wit, receiving a deposit of Alexander Gibson, knowing at the time said association was in failing circumstances, and the question arises are the officers of trust companies organized under said article 11, Revised Statutes, 1889, embraced within the provisions of section 3581? If they are, the judgment must be reversed; if not, it must be affirmed.

Prior to the enactment of the statute by the legislature in 1877, for the purpose of enforcing section 27 of article 12 of the constitution of Missouri, 1875,

session acts 1877, page 239, afterwards incorporated into the revision of 1879, as section 1350, the directors or officers of an incorporated bank were not held criminally liable for receiving deposits, knowing such bank was insolvent or in failing circumstances.

The constitution and the statute in terms applied only to officers of *banking institutions.* Although there were at that time many other corporations in existence in this state, banking corporations alone were mentioned in the constitution and the statute.

A familiar rule of construction of criminal statutes is that they should be strictly construed and not extended or enlarged by judicial construction, so as to embrace offenses and persons not plainly within their terms. *State v. Bryant,* 90 Mo. 534; Sedgwick on Construction of Statutory and Constitutional Law [2 Ed.], 280; *Fusz v. Spaunhorst,* 67 Mo. 256; *Kritzer v. Woodson,* 19 Mo. 327; *Howell v. Stewart,* 54 Mo. 400; *United States v. Morris,* 14 Peters, 464; Bishop on Statutory Crimes [2 Ed.], secs. 196, 227. The reason of the rule is found in the tenderness of the law for individuals, and on the plain principle that the power of punishment is vested in the legislature and not in the judicial department.

It is the duty of the legislature and not the courts, to define a crime and ordain its punishment. "If we had the power of legislation," says Lord Kenyon, applying the penalties for nonresidence, "perhaps we should think it proper to extend the penalties created by the statute of Henry VIII, chapter 13, to all benefices with cure of souls; but as it is our duty to expound and not to make acts of parliament; we must not extend a penal law to other cases than those intended by the legislature, even though we think they come within the mischief intended to be remedied." *Jenkinson v. Thomas,* 4 Term Reports, 666 (cited in Sedgwick on Con-

struction of Statutory and Constitutional Law [2 Ed.], p. 281); *United States v. Clayton*, 2 Dill. (C. C.) 219.

The act of 1877 was construed by this court in *State v. Kelsey*, 89 Mo. 623, and held to apply only to *incorporated banks* and not to private bankers.

It is apparent at a glance that when section 3581 was first enacted in 1877, it was not then intended to apply to trust companies because the act providing for the incorporation of trust companies in this state was first enacted in 1885. Session Acts of 1885, p. 103.

Since the decision in *State v. Kelsey*, 89 Mo. 623, was promulgated, the act of 1877, or section 1350 of Revision of 1879, has been amended so as to include private bankers. Session Acts, 1887, p. 162. *State v. Buck*, 108 Mo. 628; *State v. Buck*, 25 S. W. Rep. 573. As the Western Trust and Saving Association is an *incorporated company*, this amendment can not affect the liability of its officers.

The position assumed by the attorney general and prosecuting attorney of Jackson county is that the act originally creating trust companies in effect invested them with the functions of banks or banking institutions. The first subdivision of section 2839, Revised Statutes, 1889, the basis for this contention, is in these words: "Corporations may be created under this article for any one or more of the following purposes: *First*, to receive moneys in trust, and to accumulate the same at such rates of interest as may be obtained or agreed on, or to allow such interest thereon as may be agreed, not exceeding in either case the legal rate." The two sections added by amendment vested in trust companies additional powers, as follows: "*Eighth*, to loan money upon real estate and collateral security, and to execute and issue its notes and debentures payable at a future date, and to pledge its mortgages on real

estate and other securities, as security therefor; *ninth*, to buy and sell all kinds of government, state, municipal and other bonds, and all kinds of negotiable and nonnegotiable paper, stocks and other investment securities.'' Laws, 1887, p. 116, and found in R. S. 1889, sec. 2389, subdivisions eighth and ninth. In short, he claims that the first section constitutes a trust company *a bank of deposit,* and the eighth and ninth sections, *a bank of discount,* whereas the defendant contends that whilst it is true that these trust companies are authorized to exercise some of the functions of a bank, they do not thereby necessarily become banking institutions or banks.

Section 7, article 12, of the constitution of this state, provides that: ''No corporation shall engage in business, other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized,'' etc.

Again it is further provided by section 26, article 12, constitution of Missouri, under title ''Act creating banks to be submitted to the people:'' ''No act of the general assembly authorizing or creating corporations or associations with banking powers (except banks of deposit or discount), nor amendments thereto, shall go into effect, or in any manner be enforced, unless the same shall be submitted to a vote of the qualified voters of the state, at the general election next succeeding the passage of the same, and be approved by a majority of the votes cast at such election.''

It was the evident purpose of this latter constitutional provision to prevent the incorporation of banks of issue (even with legislative authority) without the act first being submitted to the people.

Section 2743, Revised Statutes, 1889, chapter 42, article 7, entitled ''Savings Bank and Fund Companies,'' is as follows:

"Sec. 2743.—*Who may be incorporated.*—Any five or more persons in any county of this state, who shall have associated themselves by articles of agreement, in writing, as provided by law, for the purpose of establishing a bank of deposit or discount, or of both deposit and discount, may be incorporated *under any name or title designating such business.*"

Section 2836, Revised Statutes, 1889, chapter 42, article 11, entitled "Trust Companies," provides, that "Any three or more persons who shall have associated themselves by articles of agreement, in writing, as provided by law, for any of the purposes included under section 2839 of this article, may be incorporated *under any name or title designating such business.*"

We think it obvious that whatever result was attained by the foregoing legislation, it most clearly was not the intention of the legislature that these trust companies should perform the functions of banks of deposit or discount, or banks of deposit and discount. To create a bank, it is absolutely necessary that five persons shall associate before a charter can be obtained, whereas three persons only are required to procure a charter for a trust company. The powers and rights of banks are defined by section 2745, and those of the trust companies by section 2839.

Unquestionably some of the powers usually exercised by incorporated banks are conferred by these statutes upon trust companies, but many of the powers and rights of banks are not conferred upon them, and a distinct class of powers are granted to trust companies which banks do not, and are not authorized to, exercise at all. For example, banks have the right to receive money on deposit, and thereby the relation of debtor and creditor is established between the bank and the depositor. Trust companies have no right to receive deposits, but can only receive money in trust,

and thereby the relation of trustee and *cestui que trust* is established between the company and the customer. Trust companies have the right to perform various and sundry acts specified in section 2839, none of which can be performed by a bank. Banks are required to furnish to the secretary of state a statement showing their condition. Sections 2751 and 2752. No such duty is required of trust companies. The officers of banks are made personally liable for all deposits received in the bank after they have knowledge that the bank is insolvent. No such penalty is imposed upon the officers of trust companies. From this enumeration of the differences between the two corporations, it will be seen that they are widely and essentially distinct and separate.

An examination of the authorities will, we think, demonstrate that the mere fact that a corporation is authorized to exercise some of the functions of a bank does not, in law, and in fact, create it a bank within the meaning of our constitution and statute.

In the case of *Wells, Fargo & Co. v. Railroad*, 23 Fed. Rep. 469, the plaintiff filed a bill to compel the defendant to give it express facilities over the line of its road in the territory of Wyoming. The defendant stated as a reason for refusing, that the plaintiff was a banking institution, prohibited from doing business in that territory under section 1924, Revised Statutes of United States, 10 United States Statutes at Large, 172, section 6, which forbade the incorporation of any bank or institution with banking powers within the territory and the establishment of any branch or agency of such corporation derived from other authority to be allowed in the territory.

The charter of the corporation is set out in the report above cited, page 470. It authorized the plaintiff "to draw, accept, indorse, guaranty, buy, sell and

negotiate drafts and bills of exchange, inland and foreign; to receive coin, money, silver and gold * * * and any kind of valuables on deposit *   *   * ; to buy, sell and dispose of gold and silver coin and bullion, gold-dust, money and securities for money and to do a general exchange and collection business; and to invest surplus or unemployed funds in bonds or notes, secured by mortgage on real estate, stocks of the government of the United States, of any of the United States, or otherwise, as the board of directors may designate." It will thus be seen that this corporation had nearly, if not quite, every power conferred upon banking institutions, in the commercial sense of the term, and it was conceded that the corporation was doing a purely banking business, at different points, notably at San Francisco and New York City. It had, however, as its principal business, the transportation of valuable property by express. And the court held that the plaintiff was not a bank or banking corporation in any of the senses in which the term bank is defined; that while it was undoubtedly true that it possessed some of the powers and facilities that may be used by a bank and are commonly used by a bank in the transaction of business, still banking was not the object of its incorporation, and the defense, based upon the provisions of the statute above referred to, was denied. In the course of the opinion the court cites with approval the opinion of the supreme court of Washington Territory to the same effect.

In *Bank v. New York*, 121 U. S. 138, a national bank brought suit to enjoin the collection of a tax by the state on the ground that the law taxing trust companies organized under the state statutes made a discrimination against national banks which was forbidden by the act of congress, under which they were organized. The court in its opinion, page 159, sets out

the corporate powers of these trust companies, which are almost precisely those of corporations organized under article 11 of the statutes of this state, and the power to receive money in these words: "To receive moneys in trust and to accumulate the same at an agreed rate of interest," which is exactly the power conferred on trust companies by 2839, Revised Statutes.

Concerning such corporations the court says: "It is evident, from this enumeration of powers, that trust companies are not banks in the commercial sense of the word, and do not perform the functions of banks in carrying on the exchanges of commerce."

The case of *Selden v. Equitable Trust Company*, 94 U. S. 419, was an action for taxes imposed by the internal revenue laws upon bankers. The definition of banker is taken from the act of congress made purposely broad to include all kinds and every part of the banking business for taxation. The company loaned its own money on notes secured by mortgages, sold these securities with its guaranty, and used the proceeds to make other loans. Held not to be a banker within the definition of an act which enacted that "every incorporated or other bank, and every person, firm, or company having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid, or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale, shall be regarded as a bank or as a banker."

The case of the *State v. Louisiana Savings Co.*, 12 La. Ann. 568, was this: The institution had, in a panic, closed its doors and remained suspended for seven days. Under the laws of Louisiana a bank which thus suspended would have forfeited its charter, and

acting upon this principle the attorney general brought
suit to forfeit the charter of this institution. The act
of incorporation authorized it to receive deposits, to
allow interest upon them, and to loan the deposits so
received.

The court in its opinion says: "The rigid rules of
our laws relative to banking operations are not appli-
cable to this case; they relate to offices of discount,
deposit and circulation. This institution is not a
'bank' in the sense of the statute, and it is clear, that
the legislature did not intend to incorporate a bank;
the act authorizes a corporation and calls it a corpora-
tion and not a bank, and it has no power to issue notes
for circulation. It is evident that the statutes, regard-
ing banking corporations, do not govern the case at
bar."

In *Pratt v. Short*, 79 N. Y. 437, the powers of the
"People's Safe Deposit and Saving Institution," a cor-
poration created by special charter, included the right
to receive deposits, but did not include the power to
discount or loan on commercial paper. A note was
discounted by such corporation and an action on the
same defended on the ground of the illegality of the
transaction, under the law prohibiting such discounts
by any corporation not a bank. The court, after
enumerating the powers conferred by the charter, pages
441, 442, proceeds to declare that the legislature did
not by the charter intend to create a banking corpora-
tion, although some banking powers were conferred,
and sustained the defense holding the note void under
the restraining act.

The same principle was applied in the case of *Loan
and Trust Co. v. Helmer*, 77 N. Y. 64. The powers of
the corporation are stated in the opinion. Under its
charter the plaintiff had undertaken to act as a bank
in discounting notes and in an action upon a note thus

discounted the defense was set up that it was a viola-
tion of the restraining act above referred to. The
defense was sustained and the note held void.

In *People v. Railroad*, 12 Mich. 390, a *quo warranto*
was brought against a railroad company for usurping
banking powers by issuing circulating notes. It had
the power to grant evidences of debt incurred by it
which it put in the form of demand notes which circu-
lated as currency. It pleaded its corporate powers in
justification. The plea was held bad, the court saying
that banking powers were not conferred "nor can a
grant of a single power usually exercised by banks
imply the right to any further and different banking
powers."

*State v. Granville Alexandrian Society*, 11 Ohio, 1,
was also a *quo warranto* for usurping banking privi-
leges. The charter had been granted at an early day
before banking had become a franchise and when there
was no restraining law, and the privileges conferred
were of the same character and quite as extensive as
those of the corporation in the case of *State v. Stebbins*,
cited below. But the court held that the charter did
not create a bank or give banking powers, and the
exercise of such powers was a usurpation for which
*quo warranto* would lie.

In *State v. Stebbins*, 1 Stewart (Ala.), 299, the
defendant was indicted and tried for issuing bank notes
for circulation without authority of law. A special
verdict was rendered under which their charter was set
out *verbatim*, and it will be found at pages 300, 301 of
the report. It was held that the corporation was not a
bank, or a banking institution, and had no power to
issue notes for circulation. "No corporation," says
the court, "can legally exercise banking privileges
unless the power be specially granted."

It is urged by the attorney general that it is agreed

in the stipulation that this "Western Trust and Saving Association received deposits of money subject to check," and this is a privilege conferred by the law only upon banks.    If this association did thus receive money its officers clearly violated its charter, but it did not thereby become a banking institution or a bank. The violation of its own charter would not *ipso facto* create it a corporation of a distinct class, without having complied with any of the indispensable prerequisites necessary to such corporation.

The learned counsel for the state insist that the facts of this case bring it within the principle decided in *State v. Buck*, 108 Mo. 628.    Buck was a private banker and was doing a banking business and we held that his failure to comply with some of the statutory requirements would not exempt him from the penalty of the statute.    But, in this case, the defendant was the president of a trust company.    The institution was not a bank or banking institution and yet he is only indicted as the president of a banking institution. These facts appearing upon the face of the indictment render it bad for repugnancy.

The legislature has not declared the violation of the trust company's charter, by receiving money subject to check, to be a crime.    These trust companies were in existence when the legislature deemed it necessary to amend section 3581 so as to include private bankers. If it was the intention to include them, it seems incredible that they should not have said so in unmistakable language.    We recognize and appreciate the full force of the reasoning that if these trust companies are permitted to receive moneys subject to check, they are exercising the prerogatives accorded only to banks or banking institutions and should be subjected to the same penalties, and have thrown around them the same safeguards, but as we find no such right in their char-

ters and the legislature has not seen fit to embrace them in section 3581 we must presume that the law-making power considered there were ample civil reme-dies to compel these companies to move within the powers prescribed in their charters, and that it was not to be anticipated that they would usurp powers not conferred upon them. It follows that in our opinion trust companies' organized under article 11, Revised Statutes, 1889, were not embraced within the provisions of section 3581, and the demurrer was properly sustained. The judgment is affirmed. All of this division concur.