**STATE of Missouri, Respondent,**

v.

**Darrell RANDALL, Appellant.**

**No. KCD 27897.**

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

Motion for Rehearing and/or Transfer Denied Aug. 30, 1976.

Application to Transfer Denied Oct. 12, 1976.

Thomas M. Larson, Pub. Defender, Lee M. Nation, Kansas City, for appellant.

John M. Danforth, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and ROBERT R. WELBORN and ANDREW J. HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

Darrell Randall was convicted following a jury trial of possession of marihuana in one count, possession of hashish in another count, and possession of LSD in a third count. Sentence was imposed at four years confinement on the marihuana count, five years on the hashish count, and fifteen years on the LSD count, with all sentences to run concurrently.

On this appeal, Randall alleges (1) the Legislature has not designated the possession of hashish as being a crime separate from the crime of possession of marihuana and this count should be reversed, (2) an unlawful search and seizure at the time the drugs were found and seized by police officers, (3) Chapter 195, relating to drug offenses constitutes an unconstitutional delegation of legislative authority to the Division of Health, and (4) Chapter 195 is unconstitutional as applied to Randall in that it denied to him his First Amendment right to freedom of religion. This court finds the possession of hashish is not a separate crime from the possession of marihuana and reverses the conviction as to the possession of hashish but affirms the other two counts.

Randall lived in a two-story building. The building consisted of two-stories with a third story referred to as an attic. A stairway on the outside of the building led to a doorway leading onto the second story, and entrance to the third floor was obtained through a doorway located on the second floor. He stated he slept on the first floor and a Mrs. Stratton lived on the second floor. However, Randall told a police officer the entire dwelling was controlled by a church and he was the minister. A police officer working under cover testified he had visited the building prior to the date Randall was arrested and Randall showed him through the second floor and unlocked a padlock on the door leading to the third floor. The officer further testified there was no indication in the building that it was separated into multiple living units.

On the date Randall was arrested, police officers went to the building and mounted

the outside stairway to the second floor. When Mrs. Stratton opened the door they informed her they had a search warrant and immediately entered the second floor and proceeded to the third floor where the undercover officer had been shown a large quantity of drugs by Randall, together with laboratory equipment apparently used in refining various drugs. Randall was arrested after the officers had gone to the third floor and discovered the drugs.

Randall was charged in five counts with possession of drugs, however, the jury returned a verdict of not guilty on two counts, leaving the three counts previously described on which he was found guilty.

Randall urges his conviction in a separate count of possession of hashish cannot stand because hashish is actually marihuana and a separate violation has not been proscribed for the possession of hashish.

Section 195.010, RSMo 1969, as amended in 1971, defines marihuana as "all parts of the plant Cannabis Sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin."

The State produced Gary Ray Howell, the chief forensic chemist of the Regional Crime Laboratory. Mr. Howell stated hashish is defined as an extraction of the active ingredients of marihuana. He stated "so the absence of plant material plus the presence of the extractable tetrahydrocannabinol and other cannabinoids would be hashish." At another point Mr. Howell stated he distinguished between marihuana and hashish mostly by physical appearance. He stated "if it is not a green leafy material and shows to be an extraction under the microscope, it is hashish." Mr. Howell further stated hashish would be the result if the plant material were destroyed and then pressed into a fine block which would result in a pressed block of material high in concentration of tetrahydrocannabinol "THC". Mr. Howell also referred to hashish as a refined form of marihuana.

The other chemist produced by the State, Edward Covey, stated hashish is a form of marihuana.

By Chapter 195, Missouri has adopted the Uniform Controlled Substances Act with the exception of Section 195.200, the penalty section. This section is not a part of the Uniform Act. In Section 195.200 is found the only reference to hashish in Chapter 195. In that section a specific penalty is imposed for possession of hashish, depending upon the quantity.

The schedules in Section 195.017 listing proscribed narcotics or drugs lists marihuana and tetrahydrocannabinols. In none of these schedules is hashish listed.

The State argues that since the Legislature has prescribed a penalty for the possession of marihuana and possession of hashish, they must be considered as separate crimes. This question apparently has not been raised in Missouri. However, a similar question was decided in State ex rel Hubbard v. Spillers, 202 S.E.2d 180 (W.Va.1974). In that case the court quoted the West Virginia statute which is the Uniform Controlled Substances Act and contains the same listing of marihuana and THC with the same definition of marihuana as is contained in the Uniform Act as adopted in Missouri. The court in that case concluded that "hashish is either a 'material, compound, mixture, or preparation of marihuana.'" 202 S.E.2d 182[1]. The court concluded that hashish is a Schedule I controlled substance but that the indictment charging only possession of hashish was void for failure to include allegations showing hashish to be a form of marihuana which would constitute a controlled substance. The court held the possession of hashish was not a separate and distinct crime apart from the possession of marihuana since it found hashish to be marihuana.

A further difficulty with the State's position is the fact the Legislature has not defined hashish nor has it declared the possession of hashish to be a violation of the law. It was stated in State v. Reid, 125 Mo. 43, 28 S.W. 172, 173 (1894): "It is the duty of the legislature, and not the courts, to

define a crime, and ordain its punishment." See also 22 C.J.S. Criminal Law, ¶ 17.

■ The definition of marihuana, as contained in Section 195.010, includes the resin extracted from any part of the plant Cannabis Sativa L., as well as every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. It is clear the definition given by the chemist in this case would include hashish within the definition of marihuana. However, the Legislature has not proscribed the possession of hashish separate and apart from the possession of marihuana. To constitute a crime, the act must be both proscribed by the Legislature and a penalty imposed. Here a penalty was imposed but the possession of hashish was not proscribed. Since hashish, according to the testimony in this case, falls within the definition of marihuana, a separate crime has not been defined for the possession of hashish. Therefore, the possession of hashish, being marihuana, would constitute only the crime of possession of marihuana. In this case Randall was found to be in possession of 21,475.5 grams of marihuana and 1,274.7 of hashish. Considering the hashish to be marihuana, the penalty for the possession of marihuana could not be affected by adding the amount of hashish to the amount of marihuana in Randall's possession.

■ Since hashish is included in the definition of marihuana, there is no separate crime for the possession of hashish, and the conviction on Count 2 for possession of hashish is reversed.

Randall next contends the search warrant under which police went to the building and found the marihuana was invalid because the warrant simply described the building located at 3339 Gilham when in fact the building was divided into separate living units. Randall relies on *State v. Barrelli,* 317 Mo. 461, 296 S.W. 413 (1927).

■ *Barrelli* did hold a search warrant invalid which described an entire building when in fact the building was occupied by different persons and only the premises occupied by one person were intended to be searched. However, a recognized exception to this rule exists when the multi-unit character of the premises is not externally apparent and is not known to the officers executing the warrant. *State v. Aiello,* 91 N.J.Super. 457, 221 A.2d 40 (1966). See also *State v. Chisholm,* 7 Wash.App. 279, 499 P.2d 81 (1972) and 11 A.L.R.3d 1330.

Randall filed a motion to suppress the use in evidence of any items seized during the search under the warrant on the same grounds alleged here. The court held a pre-trial hearing at which various police officers testified there was nothing about the appearance of the building to indicate it was a multi-unit building or that separate parts of the building were occupied by different people. They stated there was only one street number on the building and there were no identifying numbers or letters on any of the entrance doors. One of the officers testified Randall told him the "dwelling" was the property of the Aquarian Brotherhood Church and Randall was the minister. He further quoted Randall as saying all of the items found, including the contraband, was the responsibility of Randall. The officer further stated Randall made this statement while he was on the second floor of the building. It was the second floor which Randall contended was occupied solely by Mrs. Stratton, the acknowledged secretary-treasurer of the Aquarian Church. This occupancy by Mrs. Stratton gives rise to Randall's claim of the evidence of a multi-unit building.

■ After hearing the evidence adduced by Randall concerning Mrs. Stratton's separate occupancy of the second floor and the testimony of the police officers, the court overruled the motion to suppress. On that motion the burden of proof was on Randall. The conflict in the testimony involving the credibility of the witnesses was resolved in favor of the State by the trial court. Since there was substantial evidence to support the trial court's action, this ruling will not be disturbed. *State v. Gailes,* 428 S.W.2d 555 (Mo.1968).

■ The court found there was no multi-unit use of the building. Under the rule

allowing the warrant to describe the entire building if the multi-unit use is not apparent or known, the warrant here was proper. It can also be sustained on the ground Randall failed to prove a multi-unit use.

■ Randall next complains Chapter 195 is unconstitutional because of an impermissible delegation of authority to the Division of Health to add drugs to the schedules listed by the Legislature in such Chapter. Randall was convicted for possession of marihuana and LSD which are contained in the schedules adopted by the Legislature. He was not convicted for violating any action taken by the Division of Health. For this reason, Randall has no standing to raise a question concerning the constitutionality of this Chapter on this ground because his rights are not adversely affected by the feature of the statute about which he complains. *State v. Brown,* 502 S.W.2d 295 (Mo.1973). However, it may be observed the question raised was resolved in *State v. Bridges,* 398 S.W.2d 1 (Mo. banc 1966) adverse to Randall.

Randall lastly contends the charges against him should have been dismissed because the application of Chapter 195 prohibiting the possession of certain drugs is unconstitutional as applied to him because it denies him the right of freedom of religion. As mentioned, Randall testified he is the "Done" and a minister of the Aquarian Brotherhood Church. Some of the boxes containing hashish and marihuana were labeled as being sacraments of the church. However, Randall testified the Church did not administer any sacraments and if anyone wanted to use marihuana or LSD, he was required to furnish his own.

According to Randall, the use of drugs in his church was for the purpose of enabling people to meditate and to better understand themselves and their problems. From this he seeks to invoke the doctrine adopted in *People v. Woody,* 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964). In *Woody* the court was dealing with a religious faith in peyote as an object of worship by certain American Indians. The court certainly did not give any blanket approval to the use of drugs

under the guise of some religious belief. On the contrary in a factual setting almost identical to this case, the court in *People v. Collins,* 273 Cal.App.2d 486, 78 Cal.Rptr. 151 (1969) held the employment of drugs as an auxiliary to a desired capacity for communication is not a religious purpose within *Woody.*

While the State does not have the power to dictate or control a religious belief, it does have the power to control actions. As stated in *State ex rel Swann v. Pack,* 527 S.W.2d 99 (Tenn.1975), "[f]ree exercise of religion does not include the right to violate statutory law."

It was further stated in *Davis v. Beason,* 133 U.S. 333, 342, 10 S.Ct. 299, 300, 33 L.Ed. 637 (1890), "[i]t was never intended or supposed that the (first) amendment could be invoked as a protection against legislation for the punishment of acts inimical to the peace, good order and morals of society." See also 35 A.L.R.3d 939.

■ The use of peyote was approved on a very narrow and specific ground. As held in *Collins* a supposed desire to heighten awareness or to enable one to have new dimensions opened is hardly a religious purpose. Randall has not shown in any manner that he could bring himself within the tightly drawn confines of the religious exemption for a violation of the law of this state. This point is denied.

The judgment on Count 2 for possession of hashish is reversed. The judgment on Count 1 for possession of marihuana, and on Count 5 for possession of LSD is affirmed.

All concur.