Darrell G. **RANDALL**, Petitioner,

v.

Donald **WYRICK**, Warden, Missouri State Penitentiary, Respondent.

No. 77–0616–CV–W–4.

United States District Court,
W. D. Missouri W. D.

Dec. 2, 1977.

Darrell G. Randall, pro se.

J. Michael Davis, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

Petitioner, currently confined at the Missouri State Penitentiary, Jefferson City, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging one or both of his drug-related convictions on first amendment grounds. In 1973, petitioner was convicted by a jury of selling hashish to an undercover police officer and sentenced to ten years imprisonment. In 1974, petitioner was charged with possession of marijuana, hashish, and LSD. A jury found him guilty of all three offenses, and he was sentenced to five years imprisonment on the hashish charge, four years imprisonment on the marijuana charge and fifteen years imprisonment on the LSD charge. Petitioner appealed both convictions. His appeal of the 1973 conviction was unsuccessful, *State v. Randall*, 530 S.W.2d 407 (Mo.App.1975), but in the second appeal, the Missouri Court of Appeals found that petitioner could not be convicted of possession of both hashish and marijuana. It reversed the hashish conviction but denied petitioner's appeal in all other respects. *State v. Randall*, 540 S.W.2d 156 (Mo.App. 1976).

In petitioner's first appeal (after the hashish sale conviction), the Missouri Court of Appeals found that petitioner was the religious leader of the Aquarian Brotherhood Church. He lived at the building which also served as the Church. An undercover police officer went to the Church and purchased an ounce of hashish from petitioner. The officer left the premises, analyzed the hashish, and returned to the Church, where he complained to petitioner about the quality of the drug. It appears that petitioner readily exchanged the first sample for another and showed the officer "some packets and a suitcase" on another floor of the building. Petitioner apparently told the officer that the packages and suitcase contained marijuana for use in the manufacture of hashish. 530 S.W.2d at 409.

In petitioner's second appeal, the Court of Appeals found that

Randall lived in a two-story building . . with a third story referred to as an attic. A stairway on the outside of the building led to a doorway leading onto the second story and entrance to the third floor was obtained through a doorway located on

the second floor. He stated he slept on the first floor and a Mrs. Stratton lived on the second. However, Randall told a police officer the entire dwelling was controlled by the church and he was the minister. . . . [T]here was no indication in the building that it was separated into multiple living units.

On the date Randall was arrested, police officers went into the building and mounted the outside stairway to the second floor. When Mrs. Stratton opened the door they informed her they had a search warrant and immediately entered the second floor and proceeded to the third floor where the undercover officer had been shown a large quantity of drugs by Randall, together with laboratory equipment used in refining various drugs. Randall was arrested after the officers had gone to the third floor and discovered the drugs.

540 S.W.2d 167–68.

In various pleadings filed during development of this action, petitioner has asserted that:

(1) his arrest and conviction violated the religious guarantees of the first amendment because the drugs involved in the arrest were used as "sacraments" by the Aquarian Brotherhood Church;

(2) police officers entrapped petitioner;

(3) the search warrant used to gain access to the Church was illegal;

(4) police officers made an illegal search of the Church at the time of petitioner's arrest; and

(5) police officers entered the Church with the intent to violate petitioner's civil rights or with knowledge that they were violating petitioner's civil rights.

The Court will address these claims seriatim.

### The First Amendment Claim

Petitioner first asserts that his arrest and conviction for the use and sale of narcotics violate his first amendment right to freedom of religion. In support of this claim, he asserts that the drugs involved in his arrest were sacraments of the Aquarian Brotherhood Church used to enable people to meditate and better understand their personal problems. In correspondence with this Court, petitioner has stated that

[T]he Aquarian Brotherhood Church is opposed to any drug which is addictive and destructive to humans. Yet, has used marijuana, hash, cocain [sic], and the drug known as l.s.d., to help people get off addicting drugs such as heroin, methadone, and the drug called "speed." These drugs which can properly be used to help build and heal a human are drugs that the Aquarian Brotherhood Church has, since 1971, considered sacrament.

Reduced to its essence, petitioner's claim is that voluntary use of drugs is part and parcel of the Church's program of meditation, which results in an understanding of "the sacredness of life and the belief . . . that a man is entitled to be reasoned with and has the given rights to love, and be loved in return." Thus, petitioner claims that when Missouri officials investigated, arrested and prosecuted him, they impermissibly interfered with the constitutionally protected conduct of his church.

Although a number of courts, both state and federal, have examined the first amendment question presented here, the use of drugs in religious or quasi-religious ceremony remains a difficult problem. Two cases, *Leary v. United States*, 383 F.2d 851 (5th Cir. 1967), *rev'd on other grounds*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and *United States v. Kuch*, 288 F.Supp. 439 (D.D.C.1968), are particularly instructive.

In *Leary*, Dr. Timothy Leary and his daughter were stopped at a customs checkpoint in Laredo, Texas, as they attempted to re-enter the United States. A search of the Learys and their vehicle yielded a quantity of marijuana, which became the basis for a federal narcotics prosecution. At trial, Dr. Leary introduced evidence tending to show that he had a profound religious experience after eating a number of "Sacred Mushrooms" while in Mexico. After that experience, Dr. Leary wrote many arti-

cles on the religious use of psychedelic drugs. He became a member of the Bramhakrishna sect of Hinduism and established a center and workshop for religious and scientific research. Dr. Leary testified that he used marijuana for religious illumination and meditation; he stated that his religious beliefs would not be affected if he were denied the use of marijuana, "but that he would consider it a violation of those beliefs and practices if he were denied its use." 383 F.2d at 857.

The Fifth Circuit carefully evaluated Leary's first amendment claim and found that the first amendment embraced both the freedom to believe and the freedom to act. *Id.* at 859, quoting *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213. The freedom to act, however, was conditional and relative, and Congress might prescribe and enforce "certain conditions to control conduct which may be contrary to a person's religious beliefs in the interest of the public welfare and protection of society." *Id.* The Court found that the strong and clearly expressed Congressional interest to protect the public from the obvious damages of drugs and drug traffic predominated over Dr. Leary's religious beliefs, no matter how sincere they were. *Id.* at 859–60.

*Kuch,* which closely parallels this petition, involved the beliefs of members of the Neo-American Church, a non-profit California organization which asserted that each person had a right to expand his consciousness without outside interference. To this end, psychedelic drugs were "the true Host of the Church, . . . [its] sacramental foods." 288 F.Supp. at 443. Judge Gesell, faced with the same contention as before this Court, found that the Neo-American Church's interest in the use of psychedelic drugs, even if completely sincere, could not overbalance the state's important interest in protecting the public from the dangers posed by those drugs. After finding com-

pelling support for the Congressional determination that psychedelic drugs were harmful, *id.* at 445–46, he stated:

> Defendant misconceives the Constitution . . . when she claims in effect an unbridled right to practice her beliefs. The public interest is paramount and if properly determined the Congress may inhibit or prevent acts as opposed to beliefs even when those acts are in accord with religious convictions or beliefs. If individual religious conviction permits one to act contrary to civic duty, public health and the criminal laws of the land, then the right to be let alone in one's belief with all the spiritual peace it guarantees would be destroyed in the resulting breakdown of society.

*Id.* at 445.

[1] Nine years have passed since *Kuch,* but Judge Gesell's opinion retains its vitality. The balancing test expressly applied in *Kuch* and used in *Leary* remains the law of the land; *Wisconsin v. Yoder,* 406 U.S. 205, 213–15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); the Court must therefore balance Missouri's interest in preventing the damages of narcotic drugs, as reflected by legislation, against petitioner's interest in the practice of his religion. The Court assumes for purposes of this inquiry that the Aquarian Brotherhood Church is a genuine religion and that Randall fully subscribes to its doctrines.[1]

As noted in *Kuch,* there is considerable scientific evidence to support the view that marijuana poses a substantial health hazard. There is also considerable evidence that marijuana is associated with the commission of non-drug crimes. See *United States v. Kuch, supra,* at 446, 452–53. Petitioner states, however, that marijuana has been the subject of more testing "than almost any food item on the market, yet it has been proven, time and again, to be less harmful than butter."

1. Petitioner states that the Church's Arizona corporate charter and its federal tax-exempt status are sufficient to show that his Church is a genuine religion. The Court finds that it need not decide this question, but notes that a religion is not established by adopting religious nomenclature and using it as a shield to protect antisocial conduct. *United States v. Kuch, supra* at 443.

■ This Court takes judicial notice of the fact that considerable new evidence regarding marijuana has been developed since *Kuch,* but the most that can be said about the present status of the debate over marijuana's safety is that battle has been joined. This Court finds that the Missouri legislature had a rational basis for passage of the state's narcotics laws and "that there is a substantial body of informed expert opinion which continues to support and indeed to underline and emphasize the very reasons for passage of" such laws. See *also Kuch, supra,* at 448. Missouri's marijuana laws are still based on reason [2], they are directed against a continuing social and health problem and the purposes of the statute cannot be accomplished without continued full enforcement. Additionally,

There is also a clear and compelling interest in regulation of the transfer and possession of LSD. The drug is more harmful than marijuana and defendant's religious interest in its ingestion does not outweigh the threat to the public health and safety which LSD presents. The free exercise clause of the First Amendment does not prohibit the prosecution of this defendant . . .. The practice of [his] beliefs—if beliefs they be—must give way to the public good.

*Id.* at 448.

■ Petitioner also asserts that alcohol is the most abused and dangerous drug known, "killing scores of thousands of Americans every year, the most common denominator found in acts of crime and violence." On this basis, he asserts that he has been denied equal protection because Catholic priests were not prosecuted for possession of alcohol (sacramental wine) during prohibition.[3] Whatever emotional appeal this argument may have, it is legally baseless. As noted previously, the state of Missouri has a compelling interest in the regulation of narcotic drugs and narcotics traffic which is rationally reflected in its narcotic laws. The proscriptions against the use of narcotics apply equally to all, and there is nothing to indicate that the Missouri legislature intended to discriminate against any person or religious group, assuming that the Aquarian Brotherhood Church can be described as a group for fourteenth amendment purposes. Under these circumstances, this Court can find no equal protection violation in this case. *United States v. Kuch,* 288 F.Supp. 439, 450–51 (D.D.C.1968).[4]

### Petitioner's Other Allegations

■ During development of this case, petitioner raised four other allegations. Three of these allegations challenge various aspects of the search warrants and searches employed by the Kansas City Police. These claims were carefully considered by the Missouri Court of Appeals. *State v. Randall,* 540 S.W.2d 156, 159–60 (Mo.App.1976). The review by the Court of Appeals forecloses further consideration of these search and seizure issues by this Court. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

Petitioner's final claim is that he was "entrapped" into the commission of a crime. He also states that Kansas City Police officers entered the Church to "create crime." Insofar as these claims amount to a restate-

---

**2.** Cf. *United States v. Carolene Products Co.,* 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938):

[T]he constitutionality of a statute predicated upon the existence of a particular set of facts may be challenged by a showing to the court that those facts have ceased to exist.

As noted in the body of this opinion, the newer research on marijuana's effects is not sufficient to overturn the longstanding and well-considered opinion of federal and state legislatures. This Court cannot properly and will not substitute its judgment for that of the legislatures which have considered this question.

**3.** It is possible to interpret this argument as a "second bite at the free exercise apple"; *see United States v. Kuch,* 288 F.Supp. 439, 451 (D.D.C.1968).

**4.** Even if it is true, as alleged by petitioner, that the federal government did not enforce the Volstead Act against the Catholic Church during Prohibition, this fact has no bearing whatsoever on Missouri's enforcement of *its* criminal laws.

ment of the claim that petitioner's use of narcotics is protected by the first amendment, they are denied for the reasons stated above.

Construing petitioner's cursory entrapment allegations as a separate claim, it appears that he challenges the actions of John Dawson of the Kansas City Police. Petitioner asserts that Dawson decided to "get" petitioner on a sales charge after the two men allegedly met at the Church; petitioner states that "the officer was angered because [petitioner] spoke out in opposition to the then President, Richard Nixon . . . ."

Petitioner's claims of entrapment are not reviewable in a federal habeas corpus proceeding. Under federal law, entrapment is not a constitutional defense. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and claims of entrapment may not be heard on collateral review. *See, e. g., Evans v. United States*, 408 F.2d 369 (7th Cir. 1969); *United States ex rel. Hall v. State of Illinois*, 329 F.2d 354 (7 Cir. 1964); *Turner v. United States*, 262 F.2d 643 (8th Cir. 1959); *LeDent v. Wolff*, 334 F.Supp. 64 (D.Neb.1971). Petitioner is not entitled to relief on this ground.[5]

The Court's review of the State records in this case shows that petitioner received a fair hearing on the merits of his claims in the Missouri courts, and that the Missouri Court of Appeals properly applied federal legal standards in all respects. The Court therefore finds that petitioner has not carried his burden of showing that the State court findings are not supported by the record. 28 U.S.C. § 2254(d). His claims may be denied without a hearing. *Jones v. Swenson*, 469 F.2d 535 (8th Cir. 1972); *Tyler v. Swenson*, 427 F.2d 412 (8th Cir. 1970); *Russell v. Wyrick*, 395 F.Supp. 643 (W.D. Mo.1974); *see also, LaVallee v. DelleRose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

For the reasons stated above, it is

ORDERED that this petition for writ of habeas corpus should be, and it is hereby denied.

---

5. Officer Dawson's credibility, which apparently is challenged in the pleadings, was a matter within the sole province of the jury. It is not susceptible to review by this Court. *See, e. g., Pigford v. United States*, 518 F.2d 831 (4th Cir. 1975).