COMMONWEALTH vs. DAVID NISSENBAUM
(and three companion cases).[1]

Hampden.  April 4, 1988. — April 12, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Controlled Substances. Religion. Constitutional Law*, Freedom of religion.
  *Words*, "Disturb the public peace."

On review of convictions for possession of marihuana with intent to distribute
  it unlawfully, unlawful cultivation of marihuana, and unlawful posses-
  sion of hashish, this court undertook to resolve the issue whether the
  conduct for which the defendants were convicted constituted religious
  practices protected under art. 2 of the Declaration of Rights of the
  Massachusetts Constitution. [577] WILKINS, J., with whom ABRAMS,
  J., joined, expressed the view that the constitutional issue need not be
  reached.
The Commonwealth may properly impose criminal sanctions for the posses-
  sion, distribution and cultivation of marihuana and hashish, as such
  activities disturb the public order, and such conduct is not protected by
  art. 2 of the Declaration of Rights of the Massachusetts Constitution,
  even if motivated by sincere religious purpose. [578-583] WILKINS, J.,
  with whom ABRAMS, J., joined, concurring, would affirm the convictions
  on the ground that the defendant's conduct in the instant case far exceeded
  the scope of any alleged constitutional right. LIACOS, J., dissenting.

INDICTMENTS found and returned in the Superior Court De-
partment on May 15, 1981.

Pretrial motions to dismiss were heard by *John F. Moriarty*,
J., and the cases were tried before *William W. Simons*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*John M. Thompson* for the defendants.

*Dianne M. Dillon*, Assistant District Attorney, for the Com-
monwealth

[1] Two against David Nissenbaum and one against Christine Nissenbaum.

O'CONNOR, J. The defendants, husband and wife, were each found guilty of possession of marihuana with intent to distribute it unlawfully. David Nissenbaum was also convicted of unlawful cultivation of marihuana and unlawful possession of hashish. Both defendants appealed, asserting that the conduct for which they were convicted was undertaken solely for their religious purposes and thus was protected under art. 2 of the Declaration of Rights of the Massachusetts Constitution. On our own motion, we transferred the appeals to this court.

The Nissenbaums are members, the only Massachusetts members, of the Ethiopian Zion Coptic Church, of which David is a priest. That church has existed as a religious organization on the island of Jamaica since the 1930's. Its members claim its doctrine and symbolism date back 6,000 years. Membership in the church is estimated at several thousand in Jamaica and "a couple hundred" in the United States. The church's doctrine is derived from the King James version of the Bible as interpreted by Jamaican preacher and social reformist Marcus Garvey and his successors. Church members follow the dietary laws of the Book of Leviticus and are not permitted to use synthetic or manufactured drugs of modern medicine, nor are they permitted to consume alcohol.

The Nissenbaums follow the church's teachings, including its laws concerning dress and diet. Coptics regard marihuana (ganja) as the body and blood of Christ and use it as a sacrament. Religious services are not restricted to any specific time of day, to any time of the week, or to any specific place, but are performed three times a day (morning, afternoon, and evening). During religious services, marihuana is mixed with tobacco and smoked in pipes that are passed among the church members. The process, which is regarded as a religious function, is accompanied by the reciting of psalms and the singing of chants. Coptics do not inhale the smoke; they "avoid" its "intoxicating effects" by taking it into their mouths and exhaling it from their noses. During the religious ceremonies marihuana is distributed to those present who wish to partake (members and nonmembers). It may be, and sometimes is, distributed to children.

On March 20, 1981, law enforcement officials came to the defendants' rural home in Monson to arrest David Nissenbaum on a Federal warrant. While executing the arrest warrant, a State trooper saw marihuana plants growing in a greenhouse. He arrested Christine Nissenbaum for "manufacturing" marihuana. The State trooper obtained a warrant to search the premises, and, during the search pursuant to that warrant, he seized marihuana plants, hashish, over $7,000 in cash, and approximately 103 pounds of marihuana found in various locations in the house. There then followed the indictments that led to the defendants' convictions that are on appeal.

At the outset, we address the question whether it is necessary that we decide the constitutional question in order to dispose of these appeals. David Nissenbaum was convicted of possessing hashish. It is true, as Justice Wilkins points out in his separate opinion, *post*, that Nissenbaum introduced no evidence that his purpose in possessing hashish was religious. However, the record clearly shows that Nissenbaum's proposed art. 2 defense was fully discussed by the judge and counsel before the trial, and that the judge would not permit the introduction of evidence concerning Nissenbaum's religious beliefs except for one limited purpose unrelated to the possession of hashish charge. Therefore, fairness to Nissenbaum does not permit affirmance of his conviction on the ground that the evidence was insufficient to show that whatever hashish he possessed he possessed for religious purposes. Furthermore, resolution of the question whether art. 2 protects the possession of hashish for religious purposes bears on the lawfulness of both the defendants' convictions for possession with intent to distribute marihuana and David Nissenbaum's conviction for unlawful cultivation of marihuana. Why, for example, if art. 2 might protect the possession of marihuana or hashish for good faith religious purposes, would it not also protect a parent who would possess marihuana in order to distribute it to his child whom he wishes to raise in the same religion? Also, why would art. 2 not protect one who cultivates marihuana, or possesses it with the intent to distribute it to consenting adults when the cultivation or possession have as their purpose the sharing, and perhaps spreading, of the faith?

We turn, therefore, to the question whether art. 2 protects the possession of marihuana and hashish for religious purposes. Article 2, which is set forth in full in the margin,[2] provides that no subject shall be harmed or restrained "for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship." Section 1 of art. 46 of the Amendments to the Constitution, amending art. 18 of the Amendments, provides: "No law shall be passed prohibiting the free exercise of religion."[3] We are concerned here not with religious beliefs but with conduct or practices claimed to have a religious purpose. The question is whether the Commonwealth may properly criminalize such conduct or practices without interfering with a right protected by the State Constitution. We conclude that the Commonwealth may do so.

We reach this conclusion, in part, by analogy to the First Amendment and cases decided thereunder. The language of the First Amendment appears to be absolute. The First Amendment states, without limitation or qualification, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Nevertheless, it is clear that the right to free exercise of religion under the Federal Constitution is not absolute. We have observed that "[a] law, legislatively or judicially created, that would regulate or prevent religiously motivated conduct does not violate the First Amendment if the State's interest in the law's enforcement outweighs the burden that the law imposes on the free exercise of religion. A determination of constitutionality requires a balancing of the

---

[2] "It is the right as well as the duty of all men in society, publicly, and at stated seasons to worship the SUPREME BEING, the great Creator and Preserver of the universe. And no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

[3] This language parallels in large measure the provision in the First Amendment to the Constitution of the United States that "Congress shall make no law . . . prohibiting the free exercise [of religion]."

competing interests." *Alberts* v. *Devine*, 395 Mass. 59, 73, cert. denied sub nom. *Carroll* v. *Alberts*, 474 U.S. 1013 (1985). Federal courts reaching the precise issue involved in the present case, but focusing on the First Amendment rather than art. 2, have weighed the State's interest in preventing possession of controlled substances against the burden that statutes criminalizing such activity may impose on the free exercise of religion. After such balancing, the courts have uniformly determined that the First Amendment does not protect the possession of controlled substances from the reach of criminal statutes. We find these cases to be instructive.

In *United States* v. *Rush*, 738 F.2d 497 (1st Cir. 1984), cert. denied, 470 U.S. 1004 (1985), the defendants claimed that the free exercise clause of the First Amendment provided a defense to charges of conspiracy to possess marihuana with intent to distribute it, and possession of marihuana with intent to distribute it. The government conceded that the defendants (who included one David Nissenbaum) were sincere believers in the tenets of the Ethiopian Zion Coptic Church and that the use of marihuana was an integral part of that church's religious practices. *Id.* at 512. The First Circuit considered the defendants' claims under a three part test: "(a) whether the challenged law interferes with free exercise of a religion; (b) whether the challenged law is essential to accomplish an overriding governmental objective; and (c) whether accommodating the religious practice would unduly interfere with fulfillment of the governmental interest." *Id.* The court found the conflict between the criminal sanctions and the defendants' religious practices to be "self-evident," but upheld the convictions nonetheless, after "declin[ing] to second-guess the unanimous precedent establishing an overriding governmental interest in regulating marijuana" and recognizing "that accommodation of religious freedom is practically impossible with respect to the marijuana laws." *Id.* at 512-513. The court noted that the defendants' position would render marihuana laws meaningless and unenforceable.

In *United States* v. *Middleton*, 690 F.2d 820 (11th Cir. 1982), cert. denied, 460 U.S. 1051 (1983), the Eleventh Circuit

considered claims that the First Amendment protected a member of the Ethiopian Zion Coptic Church from convictions for possessing and importing marihuana. The court rejected the defense, noting that "[u]nquestionably, Congress can constitutionally control the use of drugs that it determines to be dangerous, even if those drugs are to be used for religious purposes." *Id.* at 825. See *Olsen* v. *Iowa*, 808 F.2d 652 (8th Cir. 1986) (unsuccessful habeas corpus appeal by Ethiopian Zion Coptic Church member convicted of possession of marihuana with intent to deliver); *Leary* v. *United States*, 383 F.2d 851 (5th Cir. 1967), rev'd on other grounds, 395 U.S. 6 (1969) (First Amendment not a defense to various marihuana trafficking offenses); *Randall* v. *Wyrick*, 441 F. Supp. 312 (W.D. Mo. 1977); *United States* v. *Kuch*, 288 F. Supp. 439 (D.D.C. 1968). Cf. *Peyote Way Church of God, Inc.* v. *Smith*, 742 F.2d 193 (5th Cir. 1984) (remanded for determination whether there was a compelling State interest in denying church members a right to ceremonial use of peyote and whether statute was narrowly drawn to serve an important governmental purpose, distinguishing *Leary*. On remand, the District Court found a compelling State interest in denying church members a right to ceremonial use of peyote. *Peyote Way Church of God, Inc.* v. *Meese*, 698 F. Supp. 1342 [N.D. Tex. 1988]).[4]

---

[4] Some State courts have concluded that the free exercise clause of the First Amendment, as applied to the States by the Fourteenth Amendment, protects the ceremonial use of peyote by adherents of the Native American Church. See, e.g., *State* v. *Whittingham*, 19 Ariz. App. 27, cert. denied, 417 U.S. 946 (1973); *People* v. *Woody*, 61 Cal.2d 716 (1964); *Whitehorn* v. *State*, 561 P.2d 539 (Okla. Crim. 1977); *Smith* v. *Employment Div.*, 307 Or. 68 (1988), cert. granted, U.S. (1989) (109 S.Ct. 1526 [1989]). These courts recognize that other States, as well as the Federal government, specifically exempt the religious use of peyote from their controlled substances laws, and consider this relevant to whether there is a compelling State interest in restricting religious use of peyote. See *Whittingham*, *supra* at 31; *Woody*, *supra* at 819; *Whitehorn*, *supra* at 544. The Federal legislative exemption for the religious use of peyote may also be evidence of Congress' understanding that the First Amendment protects the use of peyote by Native Americans. *Smith*, *supra* at 75. The special deference given to the religious use of peyote by Native Americans is also grounded in "the sui generis legal status of American Indians" and the lengthy history

The defendants attempt to distinguish their "private" use of marihuana from cases involving "public" use. But there is no reason to believe that Federal courts would treat "private" infringements of drug laws any differently from "public" ones under the First Amendment. In at least one Federal case, *Randall* v. *Wyrick*, *supra* at 313-314, the defendant, like the Nissenbaums, was convicted of possession of marihuana after a police raid on his home, which also served as his church, and the court upheld the conviction against a free exercise challenge.

The sound reasoning of the Federal courts with regard to the First Amendment aids us in analyzing the scope of religious freedom under our own Constitution. Religious freedom is not, and cannot be, absolute under either Constitution. Under both documents, the constitutionality of a law that would interfere with the exercise of religion must depend on a balancing of the State's interest in the law's enforcement against the individual's interest in practicing his religion as he chooses. While it is possible that, in the future, we may conclude that there are circumstances in which art. 2 provides protection for religious practices not protected by the First Amendment as construed and applied by Federal courts, we perceive nothing in the language or history of art. 2 that suggests that art. 2 affords more protection in connection with the use of marihuana and hashish than does the First Amendment.

Surely, the literal absoluteness of art. 2's guarantee that "no subject shall be hurt, molested, or restrained . . . from worshipping GOD in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments," is not expanded by the proviso that an individual's religious freedom in no event permits disturbance of the public peace or obstruction of the religious worship of others. Rather, the proviso contemplates and requires a balancing of the individual's interest in religious freedom with the State's interest in preserving the public peace.

of the American Indian cultural traditions involving peyote use. *United States* v. *Rush*, 738 F.2d 497, 513 (lst Cir. 1984). See *Smith*, *supra* at 75. None of these factors is present in the instant case involving the religious use of marihuana.

We turn, then, to the meaning of the term "disturb the public peace" in the context of art. 2. Within two weeks after the Massachusetts Constitution went into effect in 1780, the General Court released a statement that suggests its understanding that practices may "disturb the public peace" in the Constitutional sense without the type of disturbance associated with breach of the peace crimes. Proclaiming itself "[d]eeply impressed with a sense of the importance of religion to the happiness of men in civil society . . .," the assembly pledged to "protect professors of all denominations, demeaning themselves peaceably *and as good subjects of the Commonwealth,* in the free exercise of the rights of conscience; and shall exert ourselves to carry the wise and equitable provision of the constitution for these salutary purposes into the fullest effect" (emphasis added). Answer of a Committee of both Houses of Assembly of Massachusetts to the speech of his Excellency the Governor at the opening of the Session, November 7, 1780, as set out in Massachusetts, Colony to Commonwealth, at 161, 164 (R. Taylor, ed.).[5] In a broad sense, all offenses are breaches of the public peace. Unless otherwise provided by statute, every indictment, whether for a common law or statutory offense, concludes by alleging that the offense was committed "against the peace of the state." Clark & Marshall, Crimes § 419, at 560 (5th ed. 1952). The United States Supreme Court, for example, used this definition of breach of the peace in interpreting the Federal Constitution. Art. I, § 6, cl. 1, of the Constitution provides that Congressmen shall "in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest. . . ." As far as the definition of breach of the peace in this constitutional context, the United States Supreme Court,

---

[5] See also The Popular Sources of Political Authority, Documents of the Massachusetts Constitution of 1780, at 32-33 (O. and M. Handlin, eds., 1966) (quoting "An American," Massachusetts Spy (Boston), July 16, 1778, in Samuel Adams, Writings IV, 34: "The religion of America is the religion of all mankind. Any person may worship in the manner he thinks most agreeable to the Deity; and *if he behaves as a good citizen,* no one concerns himself as to his faith or adorations . . ." [emphasis added]).

quoting Justice Story's Commentaries on Constitutional Law (n.d.), reasoned: "Now, as all crimes are offenses against the peace, the phrase "breach of the peace" would seem to extend to all indictable offenses . . . [including] those which are in fact attended with force and violence, as [well as] those which are only constructive breaches of the peace of the government, inasmuch as they violate its good order." *Williamson* v. *United States*, 207 U.S. 425, 444 (1908).

Balancing the competing interests, and giving significant weight and deference to the Legislature's determination that the possession, distribution, and cultivation of marihuana and hashish disturb the public order, although not controlled by that determination, we conclude that such conduct is not protected by art. 2 even if motivated by sincere religious purpose. In coming to that conclusion, we are informed by Federal precedent relative to the First Amendment. We agree with the unanimous precedent that recognizes both an overriding governmental interest in regulating such substances and the practical impossibility of doing so and at the same time accommodating religious freedom.

We conclude that art. 2 of the Massachusetts Declaration of Rights does not protect the possession of hashish for sincere religious purposes nor does it protect the .possession of marihuana with intent to distribute it or the cultivation of marihuana, even for religious purposes.

*Judgments affirmed.*

WILKINS, J. (concurring, with whom Abrams, J., joins). I, too, would affirm the convictions. In so doing, however, I need not decide whether the defendants had a constitutional right to use marihuana for religious purposes. If they had such a right, it was a limited one; the defendants' conduct far exceeded the protective scope of any such right; and there was no reversible error in the denial of the defendants' motions to dismiss the indictments or in the failure to instruct the jury concerning any right to use marihuana for religious purposes

(assuming such a right to exist). Our general practice is not to reach constitutional questions unless it is necessary to do so in order to dispose of a case properly. See *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 784 (1984); *Commonwealth* v. *Loretta,* 386 Mass. 794, 797 (1982); *Commonwealth* v. *Bartlett*, 374 Mass. 744, 749 (1978).

The defendants' trial strategy was to establish that (a) the marihuana was for their own use (thus rebutting the charges of possession with intent to distribute), and (b) their use of marihuana was solely for religious purposes and thus (they contended) protected from criminalization by art. 2 of the Declaration of Rights. The possession of marihuana (a) for household use, such as for cooking, preparing tea and tonics, and feeding chickens, and (b) for distribution to minor children, to nonchurch members, and to church members outside of religious services is not protected by art. 2. That behavior either involves no religious conduct at all,[1] or it involves religious conduct that disturbs the peace.

I would leave to another case the question whether art. 2 provides protection for the good faith possession of marihuana for (a) use for religious purposes by adults in a household, or (b) in a religious service by church members. Article 2 protection does not apply in any circumstance to the use of marihuana by minors, to the use of marihuana by nonchurch members, or to the use of marihuana by church members outside of activity commonly regarded as religious. That is all I need determine to permit me to answer the defendants' challenges to their convictions.

1. The motion judge properly denied the defendants' pretrial motions to dismiss the indictments. Even if the defendants were entitled to some constitutional protection for their religious use of marihuana, their motions to dismiss were doomed to fail, as the motion judge noted in his rulings. Any constitu-

---

[1] Although "[s]ome or many persons may regard all conduct as involving obedience or disobedience to the will of the Creator" (*Opinion of the Justices*, 309 Mass. 555, 558 [1941]) and thus entitled to the protection of art. 2, conduct protected by art. 2 must be conduct commonly regarded as religious conduct.

tional protection would only extend to one who believed in good faith in a religious doctrine that involved the use of marihuana for religious purposes. The question of the existence of such a belief would be a jury question. This would be followed by another jury question, namely, whether the uses that the defendants made of controlled substances fell within whatever constitutionally protected area of good faith conduct might exist. The motion judge could not, therefore, have properly dismissed the indictments. For the same reasons, the trial judge also properly denied the motions when they were renewed during the trial.

There was, moreover, no basis on which the defendants were entitled to a required finding of not guilty on any of the charges. If the defendants were entitled to constitutional protection of some sort, evidence raising that subject was presented in adequate form only during the defendants' cases, and that evidence, at most, presented a jury issue and not grounds for a required finding of not guilty.

2. There was no reversible error in the judge's refusal to instruct the jury that the defendants had a constitutional right to use marihuana as a sacrament in religious services or for other religious purposes. The trial judge gave the defendants substantial freedom to demonstrate that they used marihuana in large amounts for religious and nonreligious purposes. He properly concluded that evidence of that sort was relevant to the question whether the defendants possessed the marihuana with the intent to distribute it. He instructed the jury that they could consider personal use "on the issue of whether the Commonwealth has proved to your satisfaction beyond a reasonable doubt that the Defendants possessed marihuana with an intent to distribute it as opposed to an intent to use it for their personal needs." The jury decided the distribution issue in favor of the Commonwealth.

Even if the defendants had a State constitutional right to use marihuana personally for religious purposes, the failure of the judge so to instruct the jury did not prejudice the defendants. The judge told the jury that a defendant could not be convicted of possession of marihuana with intent to distribute it if he or

she possessed it for his or her own use. That charge covered religious and nonreligious personal use. It included the defendants' use of marihuana, as the evidence indicated, for cooking stews and soups, for tea, for a tonic, for a tincture, for feeding chickens, for growing more marihuana, and for personal religious purposes. Unfortunately for the defendants, the jury believed evidence of the distribution of marihuana to others and concluded that marihuana seized in the defendants' home was for distribution and not for personal use. Whatever constitutional right to possess marihuana for certain personal uses there may be, as I have said, it does not extend to possession for the purpose of distribution to minor children, distribution to nonchurch members, or distribution to church members outside a religious service or ceremony.[2]

3. If there was error in the judge's charge concerning the cultivation of marihuana (by reason of his failure to identify a constitutionally protected religious use for which marihuana would lawfully be cultivated), that error was not prejudicial to David Nissenbaum. If there were a constitutionally protected right to use marihuana for personal religious purposes, it could reasonably follow that there would be a constitutionally protected right to cultivate marihuana for those purposes. On this assumption, at a trial on a charge of unlawful cultivation of marihuana where the issue is raised by the evidence, the Commonwealth would have to prove beyond a reasonable doubt that the cultivation was not solely for constitutionally protected religious uses.

The evidence did not warrant a reasonable doubt, however, about whether Nissenbaum's cultivation of marihuana was not solely for personal religious uses. David Nissenbaum's admissions in his testimony showed that he was growing marihuana for uses outside the scope of any religious uses we might

---

[2] If the jury had found a defendant guilty of possession of marihuana but not of possession with the intent to distribute, I could not properly characterize as free of prejudicial error the judge's failure to instruct the jury on the asserted constitutional right to possess marihuana for religious purposes unless I were to pass on the entire constitutional question and decide it against the defendants.

identify as protected under the Constitution of the Commonwealth. I reject as implausible the thought that the jury would believe Nissenbaum's testimony concerning the use of marihuana for arguably protected religious purposes, reject entirely his testimony as to all the Nissenbaums' other uses of marihuana, and thus be in a position to find Nissenbaum not guilty of unlawful cultivation on the theory that the Nissenbaums' only use of marihuana was constitutionally protected. Thus, the issue of cultivation for a constitutionally protected use (in the form in which I might accept that constitutional right) never became a live issue at the trial. Moreover, because the jury found beyond a reasonable doubt that the Nissenbaums did not possess their marihuana solely for personal uses, it follows incontestably that, if asked to do so, the jury would also have found beyond a reasonable doubt that David Nissenbaum did not grow marihuana solely for personal use, religious or otherwise. A retrial on the unlawful cultivation charge is not required.

4. There is no basis for overturning the conviction of David Nissenbaum for possession of hashish. The police found 9.9 ounces of hashish in a tin can in the office area of the Nissenbaum home. On the evidence, the jury would not have been warranted in having a reasonable doubt whether David Nissenbaum kept hashish for religious uses. Neither Nissenbaum nor anyone else made reference at trial to the use of hashish (as opposed to marihuana) for religious purposes. Nissenbaum could have done so. Therefore, any asserted constitutionally protected right of religious use had no application to his conviction for unlawful possession of hashish.


LIACOS, J. (dissenting). Many years ago, Chief Justice Lemuel Shaw, writing for the court in a case involving art. 2 of the Massachusetts Declaration of Rights, stated: "This cause was argued some time since, and partly on account of the intrinsic difficulty attending some of the questions raised in the case, and a difference of opinion among the judges on some of these questions, it has stood over for consideration

and advisement, to the present time." *Commonwealth* v. *Knee-land*, 20 Pick. 206, 211 (1838).

One hundred and fifty years later we have experienced similar difficulty. The difficulty is caused partly by the inadequacy of the historical, written record as to the meaning of art. 2. Additionally, the issues are complex, arising from a clash of values protected by the State constitution and values pertaining to law enforcement as found in our statutes. This tension appears strongest when it involves the right of a disfavored religious sect, a tension not unusual in the long history of our Commonwealth. Consequently, I believe it is important to write separately in this case. I believe that the court's opinion today infringes on the right of criminal defendants to have a jury decide the issues of guilt on proper instructions of law. Even more significantly, I believe that the court's treatment of art. 2, as far as it goes, is in error.[1]

My area of disagreement with the court is on the question of the proper treatment of a defense of religious use protected by art. 2.[2] The findings of the motion judge who decided the

---

[1] The concurring opinion of Justices Wilkins and Abrams also seems to me to reflect intrinsic ambivalence whether that opinion is addressing the constitutional issue at all. Compare the statement, "I need not decide whether the defendants had a constitutional right to use marihuana for religious purposes. If they had such a right, it was a limited one," *ante* at 583, with its later statement, "The possession of marihuana (a) for household use, such as for cooking, preparing tea and tonics, and feeding chickens, and (b) *for distribution to minor children, to nonchurch members, and to church members outside of religious services is not protected by art. 2*" (emphasis supplied). *Ante* at 584. To me, statement (b) is a statement as to the meaning of art. 2, despite the concurring opinion's disclaimer. Clearly, the long history of proselytizing by organized religions would indicate that attendance of a "nonchurch member" at a religious service involves religious activity. The court's opinion, on this point, poses the questions involved more in accord with the history of religious practice when it asks: "Why, for example, if art. 2 might protect the possession of marihuana or hashish for good faith religious purposes, would it not also protect a parent who would possess marihuana in order to distribute it to his child whom he wishes to raise in the same religion? Also, why would art. 2 not protect one who cultivates marihuana, or possesses it with the intent to distribute it to consenting adults when the cultivation or possession have as their purpose the sharing, and perhaps spreading, of the faith?" *Ante* at 577.

[2] I do not disagree with the court's rulings on the propriety of the denial of the motions to dismiss or the motions for a required finding.

motion to dismiss after an extended evidentiary hearing are crucial to an understanding of this case, as much of the evidence on which he based his findings also was put to the jury.[3]

The motion judge found, and the jury heard evidence as follows. The Nissenbaums are members of the Ethiopian Zion Coptic Church of which David is a priest. He and Christine follow the church's teachings, including its laws concerning dress and diet. Coptics regard marihuana (ganja) as the body and blood of Christ and use it as a sacrament. It is mixed with tobacco and smoked in a pipe which is passed among the church members during church services. The smoking is accompanied by the reciting of psalms and the singing of chants. Although not restricted to any specific time of day, to any day of the week or to any specific place, the religious service is performed three times a day (morning, afternoon, and evening). The smoking of marihuana as a religious function, therefore, occurs daily and frequently during each day. However, Coptics do not inhale the smoke into their lungs; they avoid its "intoxicating effects" by taking it into their mouths and exhaling it from their noses. During the religious ceremonies marihuana is distributed to those present who wish to partake (members and nonmembers). During such services, ganja may be, and sometimes is, distributed to children.

The motion judge discussed the defendants' claim that the provisions of G. L. c. 94C, as applied to them, interfered with or prevented the free exercise of their religion. He concluded that even if a complete prohibition of the possession and use of marihuana were unconstitutional as applied to its use for religious purposes by sincere believers in the Ethiopian Zion Coptic Church, the indictments need not be dismissed. He stated that a threshold question of sincerity would need to be resolved by the trier of fact. Despite this, the trial judge, faced with similar evidence, refused to charge the jury on the defense of religious use.

---

[3] The trial judge denied the motion to dismiss on the same basis as the motion judge.

The court upholds the convictions of the defendants despite the refusal of the trial judge to allow the jury to decide the issue of religious use. In doing so, the court rationalizes its position by two devices. First, it absorbs into our art. 2 jurisprudence Federal law under the First Amendment "by analogy" and thus moves into a position of balancing State interests in law enforcement against the free exercise of religion. (See *ante* at 578-579.) This approach overlooks the criticism of the Federal courts for watering down the protections of religious freedom incorporated in the First Amendment. See Lupu, Where Rights Begin: The Problem of Burdens on the Free Exercise of Religion, 102 Harv. L. Rev. 933 (1989); Developments in the Law: Religion and the State, 100 Harv. L. Rev. 1606 (1987). See also L.H. Tribe, American Constitutional Law 1194 n.41, 1260-1272 (1988). Also, this approach ignores the fact that the language of art. 2, unlike the First Amendment, strikes a clearly stated constitutional balance that provides that the exercise of religion in this Commonwealth is protected "*in the manner and season* most agreeable to the dictates of [a person's] own conscience . . . *provided he doth not disturb the public peace*, or obstruct others in their religious worship" (emphasis supplied).

The court seeks to explain its divergence from this constitutionally mandated test by asserting that, in the exercise of religious belief, a person must comport himself " '*as [a] good subject[ ] of the Commonwealth.*' "[4] *Ante* at 582. In this context, the court asserts that, "[i]n a broad sense, all offenses are breaches of the public peace." *Ante* at 582. Hence, the court says that a legislative "determination that the possession, distribution, and cultivation of marihuana and hashish disturb the public order" should be given "significant weight and deference." *Ante* at 583. Implicit in this latter approach is the

---

[4] One wonders what Roger Williams and Mary Dyer, among others, would have thought of such a broad-based self-serving requirement. For the history of these and other religious dissenters, see J.A. Goodwin, The Pilgrim Republic: An Historical Review of the Colony of New Plymouth (1920); T.J. Curry, The First Freedoms: Church and State in America to the Passage of the First Amendment (1986).

thought that legislative enactments can amend the Constitution of the Commonwealth. Surely, this stands constitutional analysis on its head.

I cannot agree with either prong of the court's analysis. Hence I dissent.

1. *Protected use.* I turn now to an examination of the Nissenbaums' argument that their devotional use of marihuana in private, religious services is protected by art. 2 of the Declaration of Rights. Article 2 provides: "It is the right as well as the duty of all men in society, publicly, and at stated seasons to worship the SUPREME BEING, the Great Creator and Preserver of the universe. And no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD *in the manner and season most agreeable to the dictates of his own conscience*; or for his religious profession or sentiments; *provided he doth not disturb the public peace*, or obstruct others in their religious worship" (emphasis supplied).

It is clear from its language that art. 2 guarantees to all our people absolute freedom as to religious belief and liberty unrestrained as to religious practices, subject only to the conditions that public peace must not be disturbed or others not be obstructed in their religious worship.[5] When interpreting provisions of the Constitution, all the words are presumed to have been chosen advisedly, *Mount Washington* v. *Cook*, 288 Mass. 67, 70 (1934), and none of the words can be ignored as meaningless. *Opinion of the Justices*, 332 Mass. 769, 777 (1955). Thus, the words in art. 2 which protect a person in the exercise of his or her religious beliefs "provided he doth not disturb the public peace" must be given full meaning.

The concept involved as to those who "disturb the public peace" is one of common law origin. "It was a crime under the common law to disturb the peace of the public, or some segment of the public, by actions, conduct or utterances, the combination of which constituted a common nuisance." *Commonwealth* v. *Jarrett*, 359 Mass. 491, 493 (1971). In *Jarrett*,

[5] The question of obstructing others "in their religious worship" is not raised by this record.

the court pointed out that the addition of the phrase "disturbers of the peace" to the statutory language in G. L. c. 272, § 53, did not create a new crime, but merely prescribed a statutory penalty "for a long recognized common law crime." *Id.* at 494. See *Alegata* v. *Commonwealth*, 353 Mass. 287, 302-304 (1967).

Our most clearly articulated discussion of disturbing the peace is found in *Commonwealth* v. *Orlando*, 371 Mass. 732, 734-735 (1977). We stated: "The provision against 'disturbers of the peace' proscribes conduct which tends to annoy all good citizens and does in fact annoy anyone present not favoring it.[6] *Commonwealth* v. *Jarrett, supra* at 498. *Commonwealth* v. *Oaks*, 113 Mass. 8, 9 (1873). This definition applies a two-pronged standard to disruptive conduct. It proscribes activities which, first, most people would find to be unreasonably disruptive, and second, did in fact infringe someone's right to be undisturbed. The first prong is normative and protects potential defendants from prosecutions based on individual sensitivities. The second prong requires that the crime have a victim, and thus subjects potential defendants to criminal prosecution only when their activities have detrimental impact." *Id.*

That this definition is of long standing is evident from our early cases. In *Commonwealth* v. *Smith*, 6 Cush. 80, 81 (1850), the defendant was charged with disturbing the peace when he and others uttered "loud exclamations and outcries . . . to the great disturbance of divers citizens." We held that the criminal complaint failed to allege that the defendant's noises and utterances were of the kind that disturb the citizens of the Commonwealth, the first part of the "disturb the public peace" definition. In *Commonwealth* v. *Harris*, 101 Mass. 29, 30 (1869), where the defendant was charged with "being a disturber and breaker of the peace" when he "utter[ed] loud exclamations and outcries," we stated, in upholding the conviction: "The act must be of such a nature as tends to annoy good citizens, and does

---

[6] We also stated in *Orlando* that "the Massachusetts disturbing the peace law . . . applies a normative standard *and requires individual harm*" (emphasis supplied). *Id.*

in fact annoy such of them as are present and not favoring it." This language was repeated in *Commonwealth* v. *Oaks*, 113 Mass. 8, 9 (1873). See also *Commonwealth* v. *Sweeney*, 131 Mass. 579 (1881).

Surely, it is reasonable to infer that the framers of art. 2, being mindful of both a history of religious intolerance in our Commonwealth and of the meaning of a well established common law concept, meant to include this concept in art. 2. Thus, in order for the defendants to practice their religion so that they *do* disturb the peace, it is necessary that both parts of the definition have been satisfied. The second prong mandates that there be a victim. Here, there was no evidence proving that the defendants *publicly* sold or distributed marihuana or hashish to any nonmember of the Ethiopian Zion Coptic Church, or that the defendants breached the peace or did "annoy" any member of the public by engaging in their religious beliefs. There is nothing in the record which satisfies the second part of the standard for disturbing the peace.[7] To the extent that a person performs an act motivated by sincere religious beliefs and as part of a religious ritual or ceremony, the act will be protected by art. 2 so long as it harms no victim.[8]

---

[7] The court's opinion, citing dubious authority, *ante* at 582-583, suggests that any criminal offense is a breach of the peace outside the constitutional protection of art. 2. Putting aside the question whether a "breach of the public peace" is synonymous with "disturb[ing] the public peace," this is a clear abdication by the court of judicial power to give proper construction to constitutional provisions.

[8] In *Marcoux* v. *Attorney Gen.*, 375 Mass. 63, 64-65 (1978), we discussed concerns about the health and safety dangers of using marihuana. Here, the motion judge stated that, on the basis of the evidence presented at the hearing on the motions, he was not able to conclude that the doubts we identified in *Marcoux* had been resolved; and he said that the experts seemed to agree that marihuana "is a harmful (or at least not a harmless) drug." The question whether, and to what extent, the children of the defendants were allowed to ingest marihuana properly should have been left to the jury. Assuming that the children of the defendants were too young to make informed religious choices, the jury could decide that the decision to allow them to ingest marihuana was that of the defendants. If so, and if those decisions jeopardized the health or safety of either or both of the children, then that child, or those children, might be found to be a victim or victims. If so found, then it could be concluded that the peace was disturbed. Such issues should have been put to the jury.

2. *The jury's role*. The Nissenbaums argue that the trial judge erred in not permitting them to present their defense of "religious use" to the jury. I agree.

The judge instructed that "religious beliefs or other beliefs that the use or possession of marijuana is good or proper or legal, however sincere they may or may not be, is beside the point. The point is that such beliefs do not constitute any defense to the possession or use or distribution or intention to use or distribute such a substance . . . [s]o *religious belief is not a defense to any of these charges*" (emphasis supplied).[9] The judge's refusal to allow the jury to consider the defense of protected religious use and his explicit instruction that the jury were not to consider this defense was error.

Evidence was presented at trial as to the defendants' religious beliefs and their possession and use of marihuana as a sacrament. "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. . . . However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." *Commonwealth* v. *Campbell*, 352 Mass. 387, 398 (1967), quoting *People* v. *Carmen*, 36 Cal. 2d 768, 773 (1951). See also *Commonwealth* v. *Schnopps*, 383 Mass. 178, 182 (1981); *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975).

The defendants were entitled to have the jury consider whether, in light of the evidence presented, the defendants were protected by the provisions of art. 2. The defendants requested that the judge instruct the jury so that the jury could consider the defendants' religious beliefs. The judge refused. The convictions cannot stand. In my view, the defendants are entitled to a new trial.[10]

---

[9] The judge did instruct that the jury could consider the testimony of *personal* use on the issue whether the Commonwealth proved intent to distribute.

[10] The California Supreme Court granted a petition for a writ of habeas corpus from one convicted of unlawful possession of peyote and remanded him for trial, noting that a factual question remained as to whether he had actually engaged in good faith in the practice of a religion. *In re Grady*, 61 Cal. 2d 887 (1964).

3. *Conclusion*. The words of art. 3 of our Declaration of Rights may be worthy of note: "[A]ll religious sects and denominations, demeaning themselves peaceably, and as good citizens of the commonwealth, shall be equally under the protection of the law." We held in *Glaser* v. *Congregation Kehillath Israel*, 263 Mass. 435, 437 (1928), as to the protections afforded by arts. 2 and 3 (formerly art. 11 of the Amendments to the Constitution) that "[t]hese great guaranties of religious liberty and equality before the law of all religions are not confined to adherents of the Christian religion or to societies and corporations organized for the promotion of Christianity."

What is before us are husband and wife, found by a judge to be sincere devotees of a bona fide religion, using marihuana as a sacrament. When meaning is given to *all* of the language in art. 2, and when the facts of this case are viewed in those terms, it is clear that these convictions should not stand because the judge refused to let the jury consider the issues of religious belief and use. I dissent.