THE SOCIETY OF JESUS OF NEW ENGLAND & another[1] *vs.*
BOSTON LANDMARKS COMMISSION
(and two companion cases).

Suffolk. November 6, 1990. - December 31, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR & GREANEY, JJ.

*Religion. Boston Landmarks Commission. Church. Constitutional Law*,
    Freedom of religion.

A designation by the Boston Landmarks Commission of historically signifi-
    cant elements of the interior of a certain church as a "landmark" pur-
    suant to St. 1975, c. 772, which would have required the commission's
    approval of proposed renovation of the church interior, violated the
    owner's right, secured by art. 2 of the Massachusetts Declaration of
    Rights, to design the interior space for religious worship, provided that
    no public safety question is presented. [41-44]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on June 10, 1987, August 27, 1987, and November 24,
1987, respectively.

The cases were consolidated for trial and were heard by
*Elbert Tuttle*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*John Kenneth Felter* (*Paul E. Nemser* with him) for Bos-
ton Landmarks Commission.

*Wm. Shaw McDermott* (*Michael E. Malamut* with him)
for Boston Preservation Alliance & others.

*Thomas H. Hannigan, Jr.* (*Edward B. Hanify & Eric A.
Smith* with him) for The Society of Jesus of New England &
another.

[1]Robert E. Manning, S.J., individually and as president of The Society
of Jesus of New England and head of the New England Province of the
Jesuits. We shall refer to the plaintiffs collectively as the "Jesuits."

The following submitted briefs for amici curiae:

*Daniel D. Levenson* for American Jewish Congress.

*Carl H. Esbeck* of Missouri, *Michael J. Woodruff* of Virginia, *Forest D. Montgomery, Oliver S. Thomas & J. Brent Walker* of the District of Columbia, & *Angela C. Carmella* for The Christian Legal Society & others.

*Mitchel S. Ross & Barry S. Fischer* for Mary Ann Jasienowski, trustee of The Theater Trust.

*James M. Shannon*, Attorney General, *Rosanna Cavallaro & Ruth A. Bourquin*, Assistant Attorneys General, for Massachusetts Historical Commission.

*David A. Doheny, Andrea C. Ferster & Elizabeth S. Merritt* of the District of Columbia & *Claudia A. Sauermann & Joseph Glannon* for National Trust for Historic Preservation in the United States & others.

*Lee Boothby* of Michigan, *Robert W. Nixon & Walter E. Carson* of Maryland & *Harold Lance & Rolland Truman* of California for Council on Religious Freedom & another.

*John J. Egan, Eileen Z. Sorrentino, Wilson D. Rogers, Jr., John M. Griffin, Gerald D. D'Avolio & Frederic J. Torphy* for Massachusetts Catholic Conference.

LYNCH, J. These cases raise the question whether the Boston Landmarks Commission (commission) may constitutionally designate elements of the interior of a church as a landmark, pursuant to St. 1975, c. 772 (landmarks statute). In a consolidated action challenging such a designation, a Superior Court judge held that the designation violated the free exercise clause of the First Amendment to the United States Constitution, and, therefore, granted summary judgment to the Jesuits. This court granted the application of the commission for direct appellate review, and we now affirm the judgment on the ground that the designation of the church interior violated art. 2 of the Declaration of Rights of the Massachusetts Constitution.[2]

---

[2]The Jesuits contest only the designation of the interior of the church. Therefore, any questions regarding the designation of the exterior of a church or of a church as a whole are not before us and are not decided.

The material facts recited below are not in dispute. The Church of the Immaculate Conception is located in Boston's South End. There are few finer examples of classic mid-Nineteenth Century church design.

Nevertheless in 1986, faced with an aging, oversized building and sparse attendance, the Jesuits developed a plan to renovate the church. The plan called for renovation of the main church into office, counseling, and residential space. When the renovation work began, however, ten voters of the city of Boston promptly petitioned the commission to designate the interior of the church as a landmark under § 4 of St. 1975, c. 772.

In May, 1987, the commission approved landmark designation for portions of the church's interior. The designation restricted permanent alteration of the "nave, chancel, vestibule and organ loft on the main floor — the volume, window glazing, architectural detail, finishes, painting, the organ, and organ case." Under the landmarks statute, renovation of these elements now requires the commission's approval. See St. 1975, c. 772, §§ 5 (*a*), 6, 7. The designation exempted only routine maintenance and the installation of portable or nonpermanent furnishings from the requirement of review by the commission. The Jesuits appealed from the designation to the Superior Court pursuant to St. 1975, c. 772, § 9, seeking to have the designation set aside on constitutional grounds.

Shortly thereafter, in July, 1987, the Jesuits filed an application with the commission seeking approval of a revised renovation plan for the church interior. In pertinent part, the plan called for construction of a new central altar, removal of the existing main altar, tabernacles, and altar tables in the chancel and side aisles, and construction of rooms for pastoral counseling in the rear of the side aisles. The application was denied, and the Jesuits initiated another suit against the commission. The Jesuits then filed another application for design approval calling for screening the main altar rather than removing it. After the Jesuits filed a third suit, the commission approved the second renovation plan. The renova-

409 Mass. 38                                                                41

Society of Jesus of New England v. Boston Landmarks Commission.

tions proposed by the Jesuits in their second application are now complete.

The Jesuits argue that the designation of the interior of their church as a landmark violates a number of State and Federal constitutional provisions. Because we hold that the designation violates art. 2, we do not reach the Jesuits' remaining constitutional claims.

Article 2 provides, in part: "[N]o subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

This provision plainly contemplates broad protection for religious worship. The specific language of art. 2 guarantees freedom of religious belief and religious practice subject only to the conditions that the public peace not be disturbed and the religious worship of others not be obstructed. Thus, "in emphatic and unmistakable terms, [the Constitution] guarantees to all our people absolute freedom as to religious belief and liberty unrestrained as to religious practices." *Opinion of the Justices*, 214 Mass. 599, 601 (1913). The framers and ratifiers understood the right freely to exercise one's religion to be an uncompromising principle. Consider, for example, the following contemporary definition of the right: "[E]very man has an unalienable right to enjoy his own opinion in matters of religion, and to worship God in that manner that is agreeable to his own sentiments *without any control whatsoever*" (emphasis added). Instructions of Pittsfield to its Delegates to the Constitutional Convention, 1779, reprinted in Massachusetts, Colony to Commonwealth 118 (R. Taylor ed. 1972).[3] As this court observed in one of its earliest comments on the Massachusetts Constitution, a "great object" of the Declaration of Rights was "to secure and estab-

---

[3]See also Massachusetts, Colony to Commonwealth, *supra* at 76, quoting From the Essex Result, 1778 ("no human power can cancel" the "rights of conscience"); *id.* at 151, quoting From the Return of Ashby, 1780 (art. 2 "alows [*sic*] of no restraint").

lish the most perfect and entire freedom of opinion, as to tenets of religion, and as to the choice of the mode of worship." *Adams* v. *Howe*, 14 Mass. 340, 346 (1817). The disputed landmark designation cannot survive constitutional scrutiny under these principles.

The designation restrains the Jesuits from worshiping "in the manner and season most agreeable to the dictates of [their] own conscience," contrary to art. 2. We are not persuaded by the commission's argument that the design and placement of, for example, the altar of the church is merely a secular question of interior decoration. That argument misapprehends the central significance of the location and positioning of the altar to the Jesuits' religious practices. The configuration of the church interior is so freighted with religious meaning that it must be considered part and parcel of the Jesuits' religious worship. We conclude, therefore, that art. 2 protects the right freely to design interior spaces for religious worship, thus barring the government from regulating changes in such places, provided that no public safety question is presented.

Nothing in *Opinion of the Justices*, 333 Mass. 783 (1955), immunizes the burden on religious practice imposed here from art. 2 scrutiny. There the Justices stated their opinion that the statute preserving the architecture of the "Historic Beacon Hill District," within which renovation of building exteriors required government approval, was constitutional even as applied to religious buildings. *Id.* at 790. The statute under consideration, however, affected only the exteriors of buildings, and only in so far as those exteriors were "open to view from a public way." *Id.* at 784. The government intrusion here is substantially more invasive, reaching into the church's actual worship space. Such government regulation cannot be squared with the plain meaning of art. 2.

Further, the religious conduct burdened by the landmark designation is not exempted from art. 2 protection by the provisos permitting regulation of conduct that disturbs the public peace or obstructs the religious worship of others. Renovation of the interior of the church clearly would not

"disturb the public peace," as we have defined that phrase. See *Commonwealth* v. *Orlando*, 371 Mass. 732, 734-735 (1977) (disturbance of public peace defined as unreasonable disruptiveness plus infringement on someone's right to be undisturbed). Nor can we imagine how renovation of this church might obstruct the religious worship of nonmembers.

Therefore, the commission's reliance on *Commonwealth* v. *Nissenbaum*, 404 Mass. 575 (1989), is misplaced. In *Nissenbaum* we held that under art. 2, *if* religiously motivated conduct disturbs the public peace, then the permissibility of applying a statute burdensome to that conduct is determined by balancing the interest of the State in enforcing the law against the individual's interest in worshiping as he chooses. *Id.* at 581-583. Weighing the competing interests in that case, we concluded that art. 2 permitted the State to criminalize the religiously inspired use of marihuana and hashish. *Id.* at 583. In this case, however, the religious conduct burdened by the State (the reconfiguration of the interior of a church) neither disturbs the public peace nor obstructs the religious worship of others. Thus, the challenged action fits neither of the escape provisions in art. 2, and cannot evade the sweep of art. 2's categorical prohibition against government restraints on religious worship.

The government interest in historic preservation, though worthy, is not sufficiently compelling to justify restraints on the free exercise of religion, a right of primary importance. In short, under our hierarchy of constitutional values we must accept the possible loss of historically significant elements of the interior of this church as the price of safeguarding the right of religious freedom.

We conclude, in sum, that the landmark designation of the church interior unconstitutionally restrains religious worship. We further conclude that the conduct the commission attempted to regulate, renovation of the church interior, neither disturbs the public peace nor obstructs the religious worship of nonmembers of the church. Therefore, we hold

that the designation is unconstitutional under art. 2 of the Massachusetts Declaration of Rights.

*Judgment affirmed.*