Cardinal William H. KEELER,
et al., Plaintiffs,

v.

MAYOR & CITY COUNCIL
OF CUMBERLAND, et
al., Defendants.

Civil Action No. S–96–167.

United States District Court,
D. Maryland.

Oct. 15, 1996.

880

Peter E. Keith, Thomas N. Biddison, Jr., and David W. Kinkopf, Gallagher, Evelius & Jones, Baltimore, MD, for plaintiffs.

H. Jack Price, Jr., Cumberland, MD, for Mayor & City Council.

Joyce Kestenbaum, U.S. Department of Justice, Civil Division, Federal Programs, Washington, DC, for Historic Preservation.

Lynn A. Battaglia, U.S. Attorney and Kaye A. Allison, Assistant U.S. Attorney, Baltimore, MD, for Intervenor, the U.S.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This action is before the Court on the plaintiffs' motion for summary judgment on Counts II, III, VI, VII and IX of their amended complaint. The defendants have opposed the motion. The issues having been fully briefed, no oral hearing is necessary. Local Rule 105.6 (D.Md.).

### Factual and Procedural Background

The plaintiffs in this action, Cardinal William H. Keeler, Roman Catholic Archbishop of Baltimore, and Sts. Peter and Paul's Roman Catholic Congregation, Inc. (collectively "the Church"), sue the City of Cumberland for permission to demolish a monastery and a chapel which the plaintiffs deem to be "a draining financial liability." (Cmplt., ¶ 1.) The Church seeks to replace the old monastery and chapel, both of which are in disrepair, with smaller, modern facilities, and to add gardens and a parking lot. Because the church buildings are part of Cumberland's Washington Street Historic District, however, the Church cannot demolish them without first securing a Certificate of Appropriateness from the Cumberland Historic Preservation Commission. The Church applied to the Commission for such a certificate but its application was denied. This litigation followed.

In a ten-count complaint filed on January 18, 1996, the Church alleged that the City's refusal to issue the Certificate of Appropriateness violated its rights under the First, Fifth and Fourteenth Amendments to the United States Constitution and under corresponding provisions of the Maryland Declaration of Rights. In Count I of the complaint, the Church also alleged a cause of action arising under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb (RFRA). The City moved to dismiss the complaint in its entirety. On June 10, 1996, this Court granted the City's motion with respect to Count I because RFRA, which

forms the basis of the Church's cause of action in that Count, violates the constitutional principle of separation of powers. *Keeler v. Mayor & City Council of Cumberland,* 928 F.Supp. 591 (D.Md.1996). The Court denied the City's motion with respect to the remaining counts.[1]

The Church now seeks summary judgment on the following counts of the complaint: Counts II and III, which allege violations of Free Exercise Rights protected by the Constitution of the United States and by the Maryland Declaration of Rights; Counts VI and VII, which allege that the City took the Church's property without just compensation, in violation of the state and federal constitutions; and Count IX, which alleges that the Historic Preservation Committee's actions violated state statutory law. In addition to the entry of summary judgment on these counts, the Church seeks an order directing the City to issue a Certificate of Appropriateness for the demolition of the monastery, a declaratory judgment, money damages, its attorney's fees, and other proper relief.

### Summary Judgment Standards

Summary judgment may be entered in a civil case if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court must consider the facts and draw its inferences in the light most favorable to the party opposing the motion. *See Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). In the present case, almost all of the material facts are uncontroverted. Indeed, the "List of Facts in Dispute" submitted by the City contains only four items, none of which, for reasons that follow, constitutes a material factual dispute for summary judgment purposes. Consequently, the material issues for

decision are issues of law, and the case is an appropriate one for summary disposition.

### Count IX—Violations of the Enabling Statute

The Church contends that Cumberland's historic zoning ordinances violate Maryland law because they grant to the City of Cumberland authority which exceeds that contemplated by the enabling statute, Md.Ann. Code art. 66B, §§ 8.01 et seq.[2] Because "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them," *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988), and because a decision favorable to the Church on the statutory issue would render consideration of the constitutional claims unnecessary, this Court must first address the Church's arguments under Count IX.

According to the Church, "the very part of the [Cumberland] Ordinance relied on by Defendants to reject Plaintiffs' application was different than [sic][3] and contrary to the relevant state enabling statute." (Church's Reply at 17.) The Church refers to section 7.c. of Ordinance No. 2970, which addresses those situations in which, because a building is deemed to be of particular historical importance, the Historic Preservation Commission is authorized to negotiate with the owners to formulate an economically feasible use for the property. *See* Ordinance No. 2970, § 7.b. Section 7.c. provides, in part, as follows:

> In the event that the commission and the owner are unable to reach either an economically feasible plan for preservation or any other means of preserving the building, and unless in these circumstances the commission is satisfied that the proposed ... alteration ... will not materially impair the historic value of the structure, the commission shall reject the application.

---

1. The Court's published opinion contains a more detailed statement of the facts of the case.

2. For the purposes of this argument, the parties properly refer to the state and local law in force

at the time that the City's allegedly unauthorized actions were taken.

3. *See* H.W. Fowler, *Modern English Usage* 620–621 (3d ed.1983).

882

Applying § 7.c. in the present case, the Commission denied the Church's application for permission to demolish the Monastery after the Commission had "concluded that the structures at issue are of unusual importance and no economically feasible plan can be formulated for their preservation." (Parties' Stipulation and Agreement, Exh. 8 to City's Opp.)

■ The Church argues that the enabling statute, Md.Ann.Code art. 66B, §§ 8.01 *et seq,* does not authorize the City to adopt the rejection procedure set forth in § 7.c. of Ordinance No. 2970. Specifically, the Church argues that Article 66B, § 8.09 of the Maryland Code, which pertains to buildings deemed to be of unusual importance, precludes the City from rejecting applications for demolition where there is no economically feasible plan to preserve the property. The statute provides, in pertinent part, as follows:

(a) If an application is submitted for reconstruction or alterations affecting the exterior appearance of a structure ... the preservation of which the commission deems of unusual importance ..., the commission shall attempt with the owner of the structure to formulate an economically feasible plan for the preservation of the structure. Unless in these circumstances the commission is satisfied that the proposed [alteration] will not materially impair the historic value of the structure, the commission shall reject the application....

(b) If an application is submitted for reconstruction, alteration, or for moving or demolition of a structure that the commission deems of unusual importance and no economically feasible plan can be formulated, the commission shall have ninety days ... to negotiate with the owner and other parties in an effort to find a means of preserving the building.

Md.Ann.Code art. 66B, § 8.09. According to the Church, § 8.09 treats buildings for which there is no economically feasible means of preservation quite differently from buildings which can feasibly be preserved. The Church argues that the statute must be read to grant local commissions the authority to reject applications only if there is an economically feasible way to preserve the property.

According to the Church, § 8.09 requires local commissions to grant such applications if there is no economically feasible preservation plan. *See* Church's Reply at 16–20. The enabling statute, however, does not so provide, whether expressly or by necessary implication.

In subsection (a), § 8.09 provides that the city and property owners should attempt to formulate an economically feasible plan for the preservation of particularly important structures. The subsection further provides that, "under these circumstances," applications to modify important historic structures must be denied unless the commission is satisfied that the historic value of the structure will not be "materially impaired" by the proposed changes. § 8.09(a). In subsection (b), the statute authorizes local governments to provide an additional ninety days of negotiations between the owner and the city in those cases in which no economically feasible plan can be formulated.

Contrary to the Church's contentions, the statute simply does not provide that applications must be granted at the end of the ninety-day period if no plan is formulated. Neither is such a gloss on the statute "the only reasonable interpretation of the law," as the Church suggests. (Church's Reply at 19.) In sharp contrast to the General Assembly's explicit command that applications to make alterations must be denied if an economically feasible means of preserving the building can be found, the legislature is silent with regard to a local commission's choice of outcome when no such plan can be made. It is quite possible that the state would not wish to foreclose further actions on the part of local government to try to preserve important historic buildings by mandating that applications be granted at the end of the ninety day period.

The issue before the Court is whether Cumberland's zoning ordinances are illegal because the City has exceeded the legislative authority granted to it in Article 66B. The Cumberland Ordinance is consistent with the plain language of the enabling statute. Although the Church has identified some ambiguity in § 8.09 of Article 66B, the statute is silent on the precise point at issue. This

Court therefore declines to hold, as a matter of law, that the City of Cumberland violated Maryland law when it enacted Ordinance 2970. Accordingly, the Church's motion for summary judgment on Count IX will be denied.

### Count II; Free Exercise under the First Amendment

The Church contends that the City of Cumberland's refusal to permit demolition of the Monastery impermissibly infringes upon its parishioners' right to the free exercise of the Catholic religion. Specifically, the Church argues as follows:

> The Archdiocese of Baltimore and the Sts. Peter and Paul Parish have a religious obligation to place the spiritual needs of the faithful entrusted to their care above concern for the preservation of a dilapidated building.... Based on their religious beliefs regarding worship, ministry, education, association, and expression, Plaintiffs wish to demolish their Monastery.... Demolition of the Monastery is the cornerstone of the Parish's plans to improve worship at the Parish, to increase accessibility to worship and other religious services for the handicapped, elderly and other parishioners, and to ·use its property as an expression of religious belief.

(Church's Memo.Mot.Summ.J. at 8–9, citations to the record omitted.) In support of this position, the Church has submitted affidavits from several of its officials. These officials include the Reverend Monseigneur G. Michael Schleupner, the current Secretary of Management Services for the Archdiocese of Baltimore; the Reverend Vance Pastorius, O.F.M. Cap., pastor of Sts. Peter and Paul Parish; Cardinal Keeler; and Sister Rita Dressman, an Ursuline Sister and Director of Religious Education at Sts. Peter and Paul Parish.

The City characterizes the Church's evidentiary support as "a number of self-serving affidavits from various individuals as to the perceived impact upon them of the Historic Commission's decision to deny the certificate." (City's Opp. at 10.) The City seems to suggest that this Court should regard the affidavits with suspicion, in part because they represent a subjective belief that there is a religious aspect to the Church's decision to demolish the Monastery.

Under the circumstances of this case, however, this Court has no authority to disregard the affiants' declaration of their beliefs. After all, what is the First Amendment about if not about one's subjective beliefs? (This Court has yet to encounter any objective beliefs.)

■ As the Supreme Court emphatically stated in *Employment Division, Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) ("*Smith II* "), "[r]epeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." 494 U.S. at 887, 110 S.Ct. at 1604 (collecting Supreme Court cases). *See also Ferguson v. Commissioner of Internal Revenue,* 921 F.2d 588, 589 (5th Cir.1991) ("courts may not evaluate religious truth"). The courts must not judge the merits of statements of religious belief because "[r]eligious experiences which are as real as life to some may be incomprehensible to others." *United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944). In a free exercise case that raises questions about the content of individuals' religious beliefs, therefore, a court may assess only the sincerity of the professed beliefs, and must leave aside the question of their truth. *See United States v. Seeger,* 380 U.S. 163, 184–185, 85 S.Ct. 850, 863–64, 13 L.Ed.2d 733 (1965). The City does not contend that the views expressed in the affidavits of the clergy and the parishioners are anything but sincere. Indeed, the record is entirely devoid of evidence that might support any such allegation. Consequently, the City's denial of the Certificate of Appropriateness infringes upon the Church's free exercise rights if the affidavits, taken as true, reveal that the demolition of the Monastery implicates elements of the Roman Catholic religion.

The Church in the present case asserts that Roman Catholic law, teaching and tradition require it to replace the old Monastery

with facilities more appropriate to its liturgical needs. Msgr. Schleupner, who holds a graduate degree in Canon Law, states in his affidavit that "the Monastery is ecclesiastical property that must be administered in pursuit of the proper ends of the Church." (Msgr. Schleupner Affid. ¶ 8, Exh. 1 to Church's Mot.Summ.J.). Under Canon Law, "[p]roperty may not be amassed for its own sake or to serve purely secular goals, but must be used to serve in meeting the spiritual needs of the people ...", (id. at ¶ 9), and "[p]astors are religiously obligated to make substantive administrative and financial decisions based on the principles of worship, doctrine, and governance...." (Id. at ¶ 15.) Because of Cumberland's refusal to issue the Certificate of Appropriateness, however, the Church cannot choose to demolish the Monastery and to release funds for the construction of more modern facilities. According to Msgr. Schleupner, "to be denied the capacity of making the concrete, practical choices that will most appropriately reflect the community's discernment of God's will is to be substantially burdened in the free exercise of an incarnational and sacramental religion" such as Catholicism. (Id. at ¶ 20.)

In a similar vein, Father Pastorius testified that his "decision and the decision of the Parish to seek demolition of the Monastery as soon as possible was motivated and compelled by religious belief." (Rvd. Pastorius Affid., ¶ 11, Exh. 2 to Church's Mem.Mot. Summ.J.) Cardinal Keeler stated that "the construction and renovation plans for the Sts. Peter and Paul Parish are motivated by our sincerely-held Catholic beliefs regarding worship, ministry, association, education, expression and church administration." (Cardinal Keeler Affid., ¶ 3, Exh. 3 to Church's Mem. Mot.Summ.J.) Sister Rita, a member of the Parish Restoration Committee, stated that the Committee had determined that "the mission of the Parish could only be fulfilled through ... the demolition of the Monastery and construction of a church annex, gardens and parking." (Rita Dressman Affid., ¶ 4, Exh. 6 to Church's Mem.Mot.Summ.J.) Numerous parishioners also submitted affidavits explaining that the existing buildings fail to satisfy the needs of the congregation, and that the new construction is crucial to the spiritual growth of the parish. See, e.g., Affidavit of Richard Michels, II, Exh. 4 to Church's Mem.Mot.Summ.J. (existing facilities offer insufficient privacy for the sacrament of reconciliation); affidavit of Peggy Ruppenkamp, Exh. 5 to same (lack of space for religious education programs); affidavit of Sandra Crabtree, Exh. 7 to same (no place for prayer or gatherings before weddings, baptisms and funerals); affidavit of Elizabeth Ann Dyer, Exh. 8 to same (lack of parking facilities decreases participation in worship services); and affidavit of Freida R. Spriggs, Exh. 10 to same (lack of nursery prevents parents with young children from participating fully in Mass).

The affidavits clearly describe a sincerely-held belief that the Monastery must be demolished and replaced as part of the Church's Roman Catholic mission. This Court is not empowered to question the validity of that belief. Under the circumstances, the Church has established, as a matter of law, that its decision to demolish the Monastery involves the exercise of the Roman Catholic faith and implicates First Amendment free exercise principles.

The First Amendment to the United States Constitution prohibits the government from legislating "an establishment of religion or prohibiting the free exercise thereof." U.S. Const. amend. I. The constitutionality of government regulation that burdens religious practice depends to a large extent upon the neutrality of the regulation with respect to religion, and upon the state's commitment to uniform enforcement of its law. Thus, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993) (citing *Smith II*). By contrast,

[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance "'interests of the

highest order'" and must be narrowly tailored in pursuit of those interests. *Church of the Lukumi Babalu Aye,* 508 U.S. at 546, 113 S.Ct. at 2233.

In the present action, the City contends that, under the principles set forth in *Smith II,* it has no obligation to treat the Church differently from any other owner of property when enforcing its historic preservation regulations. By contrast, the Church alleges that *Smith II* does not govern this case, because Cumberland's historic preservation ordinance is not a "neutral, generally applicable regulatory law." *Smith II,* 494 U.S. at 880, 110 S.Ct. at 1601. Consequently, according to the Church, Cumberland must invoke a compelling governmental interest to justify its refusal to issue the Certificate of Appropriateness.

In *Smith II,* the Supreme Court held that Oregon could give effect in unemployment compensation proceedings to its criminal law prohibiting the possession of controlled substances, despite that law's effect on individuals' free exercise rights. Individuals seeking unemployment compensation in *Smith II* had lost their jobs with a drug rehabilitation organization because they used peyote, a controlled substance, for sacramental reasons. The unemployment claimants asserted that because peyote use was part of the exercise of their religion in the Native American Church, Oregon could not constitutionally prohibit their use of peyote without a compelling governmental interest.

The Supreme Court, however, declined to follow *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), *Thomas v. Review Bd. of Indiana Employment Security Div.,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), and *Hobbie v. Unemployment Appeals Comm'n of Florida,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), three cases which had held a compelling interest standard applicable to government regulation that infringed upon free exercise rights. All three cases had "invalidated state unemployment rules that conditioned the availability of benefits upon an applicant's willingness to work under conditions forbidden by his religion." *Smith II,* 494 U.S. at 883, 110 S.Ct. at 1602. Con-

cluding that the *Sherbert* compelling interest test had been "developed in a context that lent itself to individualized governmental assessment of the reasons for the relevant conduct," the Court in *Smith II* distinguished the prior unemployment cases as having "nothing to do with an across-the-board criminal prohibition on a particular form of conduct." 494 U.S. at 884, 110 S.Ct. at 1603. The Court held that where a state uniformly enforces a neutral law of general applicability, the state need not identify a compelling interest served by its legislation. By contrast, "where the State has in place a system of individualized exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Ibid.,* (quoting *Bowen v. Roy,* 476 U.S. at 708, 106 S.Ct. at 2156). Consequently, to the extent that Cumberland's historic zoning laws provide for a "system" of exemptions and exceptions, the free exercise analysis requires application of principles other than those set forth in *Smith II.*

Cumberland City ordinance No. 2970 provides for the establishment of a Historic Preservation Commission. Ordinance 2970, § 3. The Commission is empowered to designate historic districts. *Id.,* § 5. In addition, a Certificate of Appropriateness must be sought and received from the Commission before any person may "commence[ ] any reconstruction, alteration or removal of any exterior feature, or commence[ ] any change in the exterior color ... or commence[ ] the demolition of any structures ... in any Architectural and Historic Preservation District." *Id.,* § 6.a. If the application for alteration or demolition involves "a structure, the preservation of which the commission deems of unusual importance to the City, State or nation," and if no economically feasible plan can be formulated for preservation, then the Commission is empowered to negotiate with the property owners and others in an attempt to preserve the building. *Id.,* § 7.b. Should no such agreement be reached, the Commission must reject the application. *Id.,* § 7.c. Section 7.d., however, lists several circumstances which may sus-

pend the Commission's obligation to reject a § 7.b. application:

[T]he commission may approve [a] proposed reconstruction or alteration despite the fact the changes come within the provisions of Sections b. and c. above if:

(1) The structure is a deterrent to a major improvement program which will be of substantial benefit to the City of Cumberland;

(2) Retention of the structure would cause undue financial hardship to the owner; or

(3) The retention of the structure would not be to the best interest of a majority of persons in the community.

Ordinance 2970, § 7.d.

Clearly, Cumberland's Historic Preservation Ordinance is significantly different from the "across-the-board criminal prohibition on a particular form of conduct" sustained in *Smith II.* Rather, like the unemployment compensation programs at issue in *Sherbert, Thomas* and *Hobbie,* the ordinance "has in place a system of individual exemptions." *Smith II,* 494 U.S. at 884, 110 S.Ct. at 1603. The ordinance embodies a legislative judgment that the City's interest in historic preservation should, under certain circumstances, give way to other interests, such as furthering major development and protecting property owners from financial hardship. *Smith II* recognized that where the government enacts a system of exemptions, and thereby acknowledges that its interest in enforcement is not paramount, then the government "may not refuse to extend that system [of exemptions] to cases of 'religious hardship' without compelling reason." 494 U.S. at 884, 110 S.Ct. at 1603 (quoting *Bowen v. Roy,* 476 U.S. 693, 708, 106 S.Ct. 2147, 2156, 90 L.Ed.2d 735 (1986)). Accordingly, the City's zoning regulation is not entitled to enforcement under the principles set forth in *Smith II.* As a "law restrictive of religious practice," the City of Cumberland's Historic Preservation Ordinance must instead " 'advance interests of the highest order' and be narrowly tailored in pursuit of those inter-

ests." *Church of Lukumi Babalu Aye,* 508 U.S. at 546, 113 S.Ct. at 2233.

■ The City of Cumberland's purposes in enacting Ordinance No. 2970 are stated to be "safeguarding the heritage of the City ...; stabilizing and improving property values ...; fostering civic beauty; strengthening the local economy; and promoting the use and preservation of historic districts and/or sites for the education, welfare and pleasure of the residents of the City." Ord. No. 2970, § 1.a. In its opposition to the Church's summary judgment motion, the City nowhere asserts that historic preservation is a compelling interest of government.[4] Courts and commentators are apparently unanimous in opining that it is not. *See, e.g., First Covenant Church v. City of Seattle,* 120 Wash.2d 203, 840 P.2d 174, 185 (1992) (government's "interest in preservation of esthetic and historic structures is not compelling"); *Society of Jesus of New England v. Boston Landmarks Comm'n,* 409 Mass. 38, 564 N.E.2d 571 (1990) ("[t]he governmental interest in historic preservation, though worthy, is not sufficiently compelling to justify restraints on the free exercise of religion, a right of primary importance"); 79 Opp.Att'y.Gen. ___ (Md.1994) (Opinion No. 94–037, reprinted in 21 Maryland Register 1600, 1606, Vol. 21, Sept. 16, 1994) (observing that no case upholding historic zoning "suggests that the governmental interests underlying such laws are 'compelling,' " and concluding that they are not); Thomas Pak, *Free Exercise, Free Expression and Landmarks Preservation,* 91 Colum.L.Rev. 1813, 1845 (1991) ("although the goals of landmarks preservation are valid state interests ... they do not rise to the level of more traditional justifications for compelling state interests ..."). In light of these authorities, this Court holds that the City of Cumberland has failed to assert a compelling state interest in support of its Historic Preservation Ordinance.

■ Accordingly, the Court holds, as a matter of law, that the City's refusal to grant the Church a Certificate of Appropriateness for the demolition of its monastery impermis-

---

**4.** Rather, the City's argument was that the *Smith II* standard governs the case, rather than the compelling interest standard.

sibly violates the Church's right to the free exercise of religion protected by the First Amendment. The Church is therefore entitled to summary judgment on Count II of the complaint.

### Count III—Free Exercise under the Maryland Declaration of Rights

The Church asserts that its free exercise claim under Article 36 of the Maryland Declaration of Rights also requires the City to assert a compelling state interest in support of its refusal to grant the Certificate of Appropriateness. The Church bases its argument upon Maryland law. *See* Church's Mem.Mot.Summ.J. at 19–21 (citing, *inter alia, Barghout v. Mayor & City Council,* 325 Md. 311, 600 A.2d 841 (1992), and *McMillan v. State,* 258 Md. 147, 265 A.2d 453 (1970)). The Church points out in its memorandum both that the language of Article 36 is entirely different from the language of the First Amendment, and that the Court of Appeals in *Barghout* interpreted Article 36 without reference to any cases decided under that provision's federal counterpart.[5] The City, however, responds that Article 36 of the Maryland Declaration of Rights should be construed *in pari materia* with the First Amendment, and that application of the compelling interest standard to the present case is therefore inappropriate.

In light of this Court's disposition of the Church's cause of action under the First Amendment, it is unnecessary for the Court to determine the relationship between the First Amendment, as interpreted by *Smith II,* and Article 36 of the Maryland Declaration of Rights. Because the holding of *Smith II* does not directly govern this action, the City must assert a compelling governmental interest for its restriction of the plaintiffs' free exercise rights regardless of whether Article 36 is to be read *in pari materia* with the First Amendment or whether it independently requires strict scrutiny of government action. Because the compelling interest test applies under either view of Maryland law, it would be inappropriate for this Court to decide whether, or to what extent, the Court of Appeals of Maryland would find *Smith II* pertinent to the construction of Article 36 of the Maryland Declaration of Rights. "It is axiomatic that questions of state constitutional law are to be answered by state courts, rather than by the federal judiciary." *Green v. Zendrian,* 916 F.Supp. 493, 498 (D.Md. 1996).

Because the City's infringement of the plaintiffs' free exercise rights is prohibited by Article 36 of the Maryland Declaration of Rights unless it is justified by a compelling governmental interest, and because the City has failed to allege such a compelling interest, the plaintiffs are entitled to summary judgment on Count III of their complaint.

### Counts VI and VII—Takings under the Fifth & Fourteenth Amendments and under Article III, § 40 of the Constitution of Maryland

The Church alleges that the City's refusal to issue the Certificate of Appropriateness for the demolition of the Monastery requires it to preserve and maintain the Monastery, amounting to an unconstitutional taking of property without just compensation. The Church alleges violations of both the Fifth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment, and of Articles 19 and 24 of the Maryland Declaration of Rights, the state due process clauses. (Cmplt., Counts VI and VII). Although the Church does not allude to it. Article III, § 40 of the Maryland Constitution specifically prohibits the enactment of state legislation "authorizing private property[ ] to be taken for public use, without just compensation ... being first paid or tendered to the party entitled to such compensation." The

---

**5.** Article 36 of the Maryland Declaration of Rights provide, in pertinent part, as follows:

That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights. . . .

Court of Appeals of Maryland has long held that the federal and state takings clauses "have the same meaning and effect in reference to an exaction of property, and that the decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities" for the construction of state takings claims. *Bureau of Mines of Maryland v. George's Creek Coal & Land Co.*, 272 Md. 143, 156, 321 A.2d 748 (1974). *See also Maryland Aggregates Ass'n, Inc. v. State*, 337 Md. 658, 682–686, 655 A.2d 886 (1995), and cases there cited. Accordingly, the same body of law governs both Count VI and Count VII.

■ State regulation of property amounts to a taking "where regulation denies all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). *See also Maryland Aggregates*, 337 Md. at 684, 655 A.2d 886. To amount to a taking, the challenged state regulation must do more than place an economic strain on the landowner; it must "leave his property economically idle," *Lucas*, 505 U.S. at 1019, 112 S.Ct. at 2896, or render the property "essentially valueless by government action," *Maryland Aggregates*, 337 Md. at 684, 655 A.2d 886.

■ The City's refusal to grant the Church a Certificate of Appropriateness for the demolition of the Monastery requires the Church to maintain the Monastery at a safe standard of repair. (*See* Letter of September 5, 1995 from William J. Flanigan, Building Engineer of the City of Cumberland, to Rev. Vance Pastorius, Attachment G to Exh. 2 to Church's Mot.Summ.J., stating that the City "shall immediately require of the owner ... protective maintenance and repair" of dilapidated buildings.) The buildings are undoubtedly in a state of serious disrepair. (*See* photographs, Attachment D to Exh. 2 to Church's Mot.Summ.J., showing condition of the buildings.) The cost to "retain and adequately maintain" the shell of the structures and to add sufficient heating "to maintain minimal building interior temperatures to prevent further deterioration" was estimated by Taylor Architects, Inc. to be $386,440. (Letter of November 30, 1995, from Brendan

B. Taylor to Rev. Pastorius, Attachment C to Exh. 2 to Church's Mot.Summ.J.) The cost of complete renovation of the Monastery and other buildings was estimated by the Church at "$2,000,000 plus dollars," and by Mary Miltenberger, the President of the Preservation Society and an opponent of the proposed demolition, at $1,100,000. (Transcript of Testimony before the Historic District Commission [sic] at 31 & 58.) In light of the high cost of all proposed renovations, the City has stipulated that "no economically feasible plan can be formulated" for the preservation of the Church buildings. Under these circumstances, there is no doubt that the application of Cumberland Historic Zoning Ordinances to the Church has rendered the Church property economically useless, and has worked a regulatory taking. Consequently, the Church is entitled to a declaratory judgment that the City's refusal to issue the Certificate of Appropriateness is unconstitutional.

■ The Fifth Amendment, however, "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 315, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987) (emphasis in the original). As a result, "when just compensation for the taking is provided ..., the taking ceases to be illegal and the fixing of just compensation ... puts an end to the controversy." 8 Nichols on Eminent Domain, § 14E.01, 14E–4 (3d ed.1996). Accordingly, the proper remedy for an unconstitutional taking is not an injunction against the government or an order seeking relief from the regulation, but damages. *See generally First Lutheran*, 482 U.S. at 314–322, 107 S.Ct. at 2385–90. In addition to requesting both a declaratory judgment and an order directing the City to issue the Certificate of Appropriateness, the Church has asked for damages "in an amount to be determined." (Cmplt., Prayer for Relief, subsection (f).)

In its complaint the Church made a general request for relief in the form of damages, but it did not ask for damages in its sum-

mary judgment motion. Furthermore, the Church's proposed "Order" submitted in connection with the summary judgment motion only requires the City to issue the Certificate of Appropriateness and to pay attorneys' fees. No mention is made of money damages. Nevertheless, the Church has not expressly disavowed its earlier request for damages, and this Court must give it the opportunity to establish its right to compensatory relief, should it so desire. Of course, damages may only be calculated with respect to the actual loss of use experienced by the Church. *See generally First Lutheran,* 482 U.S. at 318–320, 107 S.Ct. at 2387–89. Any issue of future damages is mooted by this Court's finding that the defendants cannot constitutionally continue to require the Church to maintain the property. Because the Church has not presented any evidence that it has yet suffered any provable or compensable economic loss, this Court's Order will offer the Church an opportunity to establish a right to money damages if it elects to do so.